## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

BBC Ice Cream LLC,

     Plaintiff,

  v.

sprd.net AG, Spreadshirt, Inc., Spreadshirt Print on Demand GmbH, and JOHN DOES 1–10,

     Defendants.

Civil Action No. _____

**COMPLAINT**

**JURY TRIAL REQUESTED**

Plaintiff BBC Ice Cream LLC ("BBC" or "Plaintiff") files this Complaint against sprd.net AG, Spreadshirt, Inc., and Spreadshirt Print on Demand GmbH (collectively, "Spreadshirt" or "Defendants"), and in support states as follows:

### INTRODUCTION

1.  BBC is the fashion label and retailer for thirteen-time Grammy zaward-winning artist and producer Pharrell Williams, through which the Billionaire Boys Club and ICECREAM clothing lines are sold.

2.  BBC is also the victim of Defendants' widespread and ongoing manufacturing, advertising for sale, and sale of counterfeit BBC products, and the infringement of BBC's intellectual property rights.

3.  Defendants unlawfully profit from the proliferation of online counterfeiting, which has become a growing threat to intellectual property rights across the globe.  Enabled by companies like Defendants', counterfeiters have abandoned traditional brick-and-mortar storefronts and turned to the internet, where an expansive reach and high level of anonymity are

1

ripe for exploitation.

4.     Defendants play a major role in the increasing sale of counterfeit goods, leveraging a massive online presence comprised of hundreds of thousands of merchants[1] to create and distribute counterfeit and infringing goods in this District and across the country, while disguising Defendants as a legitimate print on demand ("POD") company known as "Spreadshirt."

5.     Defendants have already fulfilled tens of millions of orders, a significant amount of which come from the United States, with sales of hundreds of millions of dollars. With its ever-increasing network of merchants, Defendants' ongoing expansion represents a formidable threat to the preservation of intellectual property rights.[2]

6.     To increase their sales of counterfeit and infringing products, Defendants permit merchants to sell products in one of three ways.

        a.  First, Defendants host and maintain the Spreadshirt Marketplace (the "Marketplace"), where consumers are able to purchase goods featuring various designs that have been uploaded by Defendants' merchants, including infringing designs, direct from Defendants. Defendants handle all the marketing and search engine optimization to direct consumers to the products. Notably, within the Marketplace and central to Defendants' business model is a database of images maintained by Defendants, whereby Defendants store

---

[1]     *See* https://www.spreadgroup.com/news-stories/record-year-and-ceo-change-spread-group-continues-to-grow/?category=76 (listing 130,000 "active partners" as of 2020).

[2]     *See id*. (listing 9.8 million products "printed & sent" and revenue of $195 million in 2020, and the United States as one of Defendants' top five markets).

the designs uploaded by merchants, including unauthorized and infringing designs ("Defendants' Image Database"). In addition to the purchase of pre-designed products designed and uploaded to the Marketplace by merchants, consumers are also able to exploit Defendants' Image Database and apply images stored therein to products in Defendants' product catalogue by way of Defendants' customization tool in the "Create" section of the Marketplace. As discussed further below, the design's original uploader receives a percentage of any sale of a product using that design. Similarly, in terms of pre-designed products, while the Marketplace may feature a T-shirt with an infringing design for direct purchase, a carousel at the bottom of the T-shirt product page offers users the option to "[g]et this design on other products," such as sweatshirts and hats, also featuring the infringing mark and available for immediate purchase.

b. Second, Defendants are involved with and promote "Spreadshop," which Defendants market as an "all-in-one" platform for individual merchants. These merchants can either upload designs and products to the Marketplace, or alternatively, create free personalized Shops ("Shops"), complete with individualized URLs, to design and sell products, including products with digitized counterfeit and infringing designs. Once products designed by merchants for sale in the Shops are published to the sellers' individual Shops, they can be shared on their own websites, social media pages, and other platforms. Through the Defendants' "Customize Tool" that is mirrored in the Shops, merchants can also provide consumers access to Defendants' Image

Database in order to customize their own products utilizing those designs, enabling further counterfeit and infringing products to be created. Spreadshop merchants are offered a set "affiliate commission" on any sales of Defendants' products generated from their Shops, equal to 20% of the cost of printing and products handled by Defendants. Shop users can also manage their own shops while simultaneously selling their designs or pre-designed products on the Marketplace.

c. Third, Defendants operate the "Spreadconnect" service, which provides a "plug-in" service that merchants can use to sell merchandise created through Defendants' tools and services, including merchandise incorporating infringing designs and images. Merchants can add a Spreadconnect "plug-in" as an extension within pre-existing websites, including third-party online e-commerce platforms and marketplaces such as Shopify, Etsy, Amazon, eBay, and TikTok Shop US, thus creating the appearance that the merchants' goods are coming from the merchants' own websites or other third-party e-commerce platforms, rather than Defendants. Unlike Spreadshop, Spreadconnect users are able to set their own prices for merchandise, even as Defendants control all aspects of the production and ultimate distribution of the end products.

Collectively, these services are referred to herein as Defendants' "Online Storefronts."

7. The Marketplace and Shops, and the counterfeit and infringing products sold through them and through the Spreadconnect service, remain at all times under Defendants' control: Defendants oversee and maintain the manufacturing, printing, shipping, customer service, and all other logistical and fulfillment requirements in the creation and distribution of

counterfeit and infringing products.  Indeed, Defendants—not third-party merchants—have complete control over the ability to publish products in the Online Storefronts, the critical first step in the cycle through which counterfeit and infringing products enter the stream of commerce.

8.     None of the products sold in the Online Storefronts would exist without Defendants, and Defendants control nearly every step in the process of getting those products, including infringing products, into consumers' hands.  For example:

    a.   As noted, consumers can design their own custom products using the images and designs maintained and stored in Defendants' Image Database, which contains images posted by merchants, and uploaded, stored and maintained by Defendants.  Defendants' Image Database contains trademarked images that neither Defendants nor their merchants are licensed to use. Defendants review when merchants post images to the platform and subsequently upload those images to the database, and Defendants have allowed the database to contain voluminous trademarked images.  Defendants have admitted to automating aspects of this review process in a way that does not guarantee that merchants have a right to use the images that they upload.

    b.   Defendants stock the apparel and accessories to which images are later applied to create the final products sold to consumers.

    c.   Defendants heavily advertise the Marketplace, driving large numbers of consumers to merchants' products.

    d.   Defendants handle the ordering and payment processing when a consumer orders a product through the Marketplace or a Shop, touting that "[f]rom order and payment processing through customer service – don't worry, we've got

your back."

e.  Defendants operate their own print shops where Defendants apply the images chosen by merchants or individuals to physical products and create the final products sold to consumers, including products featuring infringing designs held in Defendants' Image Database.

f.  Defendants arrange for delivery of the products to consumers and ship those products from one of their five factories in the United States and Europe.  Prior to shipping, Defendants maintain title to the products; when the products are transferred to the carrier for delivery, title passes to the consumer without the merchant ever taking title to the products. Defendants "handle[] all the logistics, including production, shipping, and customer service."

g.  For products sold through the Marketplace or a Shop, products are shipped in packaging identifying Defendants as the origin of the products.  But for products purchased through the Spreadconnect service, Defendants offer "white-label" packaging so customers will "never know" their merchandise was sent through Spreadshirt, leaving the consumer or intellectual property holder without the ability to identify the original source of the infringing product. For products purchased through users' Spreadshops, the "only mention of Spreadshirt is in the footer ('Powered by Spreadshirt')," and as Defendants note, even this can be "eliminate[d]" by users.

h.  Defendants handle all customer service issues, including returns, for their merchants relating to Defendants' products.

i.  Defendants offer bulk orders, allowing wholesale operations to produce and

sell infringing designs. However, Defendants do not require minimum order quantities, allowing individual users to purchase a small number of products or even a single infringing item.

9.  Defendants also take active efforts to conceal their responsibility for producing infringing products, frustrating enforcement efforts.  For example:

a.  Defendants offer "white label" packaging, leaving end-consumers and intellectual property rights holders unable to determine the original source of the products, and thus without recourse for reporting infringement.

b.  Defendants offer only a single email address, verify@spreadshirt.com, for reporting suspected infringement. Defendants do not provide a dedicated webpage or form for reporting infringement, instead putting the onus on mark owners to police infringement across Defendants' various websites.

10.  BBC's brand has suffered from Defendants' counterfeiting operations, as numerous products, advertising, and marketing materials using BBC and its affiliates' trademarks appear throughout Defendants' websites and shops. These infringing items are listed under product categories and product names designed to mislead consumers as to the products' origin, such as "Billionaire Boys Club Gifts," "Billionaire Boys Club Shirt," "Billionaire Girls Club Gifts," or "BBC Gifts," among others.  Defendants' conduct continues unabated, and the manufacture, publishing, advertising for sale and sales of counterfeit and infringing Products persists.  BBC brings this action to put a stop to this ongoing unlawful conduct and to hold Defendants accountable for their actions.

11.  Defendants trade upon BBC's reputation and goodwill by selling and/or offering to sell products in connection with a portion of BBC's trademarks, which are covered by U.S.

Trademark Registration Nos. 3,496,296; 5,086,483; 5,936,941; 5,953,777; 4,813,058; 5,723,816; 3,216,201; 5,242,580; 4,846,345; and 6,493,579 (collectively, the "BBC Trademarks" or "BBC Marks").  The registrations are valid, subsisting, and in full force and effect.  True and correct copies of the federal trademark registration certificates for the BBC Trademarks are attached as **Exhibit 1**.

### THE PARTIES

12.     Plaintiff BBC Ice Cream, LLC is a limited liability company registered in Delaware with its primary place of business located in New York, NY. It is the registered owner of Plaintiff's trademarks and markets and sells its trademarked goods under the Billionaire Boys Club brand label, as well as the ICECREAM and Billionaire Girls Club labels, among others.

13.     Defendant sprd.net AG is a German corporation with its principal place of business in Leipzig, Germany. sprd.net AG is the parent company of the Spreadshirt entities. sprd.net AG owns spreadshirt.net, which sends customers to various other websites it controls based on the purchaser's region, and spreadshirt.com, which handles sales in the United States.

14.     Defendant Spreadshirt, Inc. is a Delaware corporation with its principal place of business in Pennsylvania. Spreadshirt, Inc. is the contractual partner for Spreadshirt users in North America and Oceania.

15.     Defendant Spreadshirt Print on Demand GmbH is a German limited liability company with its principal place of business in Leipzig, Germany. Spreadshirt Print on Demand GmbH maintains and controls the Spreadconnect service and business conducted therewith.

16.     Upon information and belief, John Does are individuals who are consciously participating in the manufacture, distribution, sale, and advertisement of counterfeit and infringing products, or who consciously and directly benefit financially from the manufacture, distribution, sale, and advertisement of counterfeit and infringing Products, but whose identity and number are

presently unknown.

## JURISDICTION AND VENUE

17.     This Court has federal subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the federal Lanham Act, 15 U.S.C. § 1051, *et seq.*, as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act.  Jurisdiction over the state law claim is also appropriate under 28 U.S.C. § 1367(a) and principles of pendent jurisdiction because that claim is substantially related to the federal claims.

18.     Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants conduct business in this District and, on information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this District and have caused damage to Plaintiff in this District.

19.     Personal jurisdiction exists over Defendants because Defendants regularly conduct, transact and/or solicit business in Ohio by maintaining a website on which Ohio residents can upload infringing designs and design and purchase goods bearing those designs, supply their goods (including the products that infringe on Plaintiff BBC's Marks) and services to consumers in Ohio, derive substantial revenue from their business transactions in Ohio, and/or otherwise avail themselves of the privileges and protections of the laws of Ohio, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice. Ohio's long-arm statute authorizes personal jurisdiction over Defendants.

## FACTUAL ALLEGATIONS

### I.      BBC's Iconic Intellectual Property Portfolio and Products

20.     BBC is a fashion label established in 2003 and with offices in New York and retail stores in New York City and Miami.  It was co-founded by award-winning American record

producer, recording artist, and fashion designer Pharrell Williams, originally in collaboration with Japanese recording artist and designer Nigo, although Pharrell Williams is now the sole face of the company. BBC and its sublabels, including ICECREAM and Billionaire Girls Club, use highly recognizable imagery that blends casual streetwear elements with luxury fashion.

21.    In addition to its New York and Miami flagship stores and brick-and-mortar location in Hong Kong, BBC clothing and merchandise is sold at several retailers across the U.S. and the world, including Nordstrom, END, Ssense, and Selfridges.

22.    Years of promotion and consistently strong sales performance have garnered BBC global brand recognition.  For example, throughout the 2000s, BBC sublabel ICECREAM sponsored a skateboarding team that toured internationally and was the subject of a 2006 documentary.[3]  BBC's designs are frequently worn by high-profile recording artists. Williams wore BBC designs in the music video for his Oscar-nominated global hit song "Happy," among others, and BBC designs also appeared in the video for Snoop Dogg's number one hit, "Drop it Like it's Hot." The song "BBC," inspired by the company's tenth anniversary, was featured on Jay-Z's 2013 album *Magna Carta Holy Grail*.[4]  BBC frequently collaborates with professional sports teams, including a 2022, 2024, and 2025 collaboration with the New York Yankees baseball team on a series of graphic t-shirts, hoodies, and other merchandise,[5] and a February 2025 collaboration with designer Jeff Hamilton on an official jacket of the National Basketball Association's All-Star Weekend.[6] The 2024 biographical documentary about Pharrell, *Piece by*

---

[3]    https://www.imdb.com/title/tt1000724/ (last visited Feb. 24, 2025).
[4]    https://www.complex.com/style/a/kadia-blagrove/oral-history-bbc-icecream (last visited Feb. 24, 2025).
[5]    https://www.mlive.com/shopping/2024/04/how-to-get-the-billionaire-boys-club-x-new-york-yankees-collection-by-nigo-and-pharrel.html (last visited Feb. 24, 2025).
[6]    *See*  https://www.yahoo.com/entertainment/billionaire-boys-club-releases-nba-220909574.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbvbS8&guc

*Piece*, made in collaboration with LEGO, prominently featured the brand and its designs.

23.     BBC Ice Cream, LLC is the registered owner of active trademarks, including those comprising the BBC Marks, that are duly and legally issued by the United States Patent and Trademark Office. *See* Exhibit 1. The BBC Marks include the following:

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| 3,496,296 |  | Sept. 2, 2008 | IC 025. US 022, 039. G&S: Clothing, namely, shirts, T-shirts. |
| 5,086,483 |  | Nov. 22, 2016 | IC 025. US 022, 039. G&S: Clothing, namely, tops, bottoms, jackets, hooded pullovers, sweaters, footwear, headwear, socks and undergarments. |
| 5,936,941 |  | Dec. 17, 2019 | IC 018. US  001, 002, 003, 022, 041. G&S:  Sling bags; pouches made out of cloth; briefcases; tote bags IC 025. US 022, 039. G&S: Clothing, namely, tops, bottoms, jackets, hooded pullovers, vests, sweaters, socks, bandanas, headwear and footwear. |
| 5,953,777 |  | Jan. 7, 2020 | IC 025. US 022, 039. G&S: Clothing, namely, tops, bottoms, jackets, hooded pullovers, sweaters, footwear, headwear, socks, wristbands, belts and undergarments. |

e_referrer_sig=AQAAAMRUUvfpN-xKRtkut9fvRAATvbvsSAKBxuS5yjpJbmVBNkopw2_rN66uyIr7cKv4puFTH3qp7dIS2yD9q-Gl9BDoRbrdEzx3uO-QitEbsdof14g9Dot_ftg4SeUgKVNS1O0BPLtrtjFUvirrv920fOnDjX4lFaIyHZ3diTuIEUtD (last visited Feb. 24, 2025).

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| 4,813,058 | BILLIONAIRE GIRLS CLUB | September 15, 2015 | IC 025. US 022, 039. G&S: Clothing, namely, tops, t-shirts, sweatshirts. |
| 5,723,816 | BILLIONAIRE BOYS CLUB | April 09, 2019 | IC 018. US 001, 002, 003, 022, 041. G&S: All-purpose sports and athletic bags; beach, book, carry-on, duffel, gym, shoulder, tote and travel bags; fanny packs and waist packs; backpacks; knapsacks; luggage; luggage tags; business cases; business card cases; calling and credit card cases; wallets; banknote holders; billfolds; umbrellas |
| 3,216,201 | BILLIONAIRE BOYS CLUB | March 06, 2007 | IC 025. US 022, 039. G&S: Clothing, namely, jackets, coats, raincoats.  trousers, jeans, shorts, sweaters, cardigans; footwear; headwear. |
| 5,242,580 |  | July 11, 2017 | IC 016. US   002, 005, 022, 023, 029, 037, 038, 050. G&S: Stickers. |
| 4,846,345 |  | November 3, 2015 | IC 025. US 022, 039. G&S: Clothing, namely, shirts, hooded sweatshirts. |
| 6,493,579 | BILLIONAIRE BOYS CLUB | September 21, 2021 | IC 018. US 001, 002, 003, 022, 041. G&S: Garment bags for travel. |

24.    BBC creates and sells merchandise, such as clothing, footwear, and other accessories, incorporating its trademarks, including its federally registered BBC Trademarks (the "BBC Products").  From the date of the creation of the first BBC Products to the present, BBC has been the sole and official source of genuine BBC Products in the United States. BBC Products are distributed and sold to consumers throughout the world, including in the United States and Ohio,

through authorized retailers, various affiliates, and the www.bbcicecream.com website.

25.     The BBC Trademarks have been substantially and continuously marketed and promoted by BBC.  BBC has and continues to widely market and promote the BBC Trademarks through the BBC Products in the industry and to consumers.

26.     The registrations for the BBC Trademarks are *prima facie* evidence of their validity and of BBC's exclusive right to use those trademarks under 15 U.S.C. § 1057(b).

27.     The BBC Trademarks qualify as famous marks, as that term is used in 15 U.S.C. §1125(c)(1), and they have been continuously used and never abandoned. Since the launch of the BBC Products, BBC has followed a defined strategy for positioning its brand and marketing, promoting the product line in the industry and to consumers, and establishing distribution channels. BBC's promotional efforts for the BBC Products include, for example, the www.bbcicecream.com website, online advertising, high-profile collaborations and partnerships, music videos from world-renowned recording artists including Pharrell Williams, the motion picture *Piece by Piece*, and social media advertising campaigns.

28.     BBC approves and maintains quality control over all BBC Products and makes systemic efforts to safeguard the quality and integrity of the BBC Trademarks.  BBC has also expended substantial time, money, and other resources in advertising and otherwise promoting the BBC Products. As a result, products bearing BBC Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade with being products sourced from BBC.

## II.     The Rapid Rise of Infringement and Counterfeiting in the POD Industry

29.     Print-on-demand or "POD" involves the creation ("printing") of products after an order is placed, as opposed to the traditional retailer practice of printing in advance and keeping a stockpile of inventory.

13

30.     Advancements in printing technology and increasing online purchasing capabilities have propelled the growth of the POD industry.

31.     One of the major risks with POD is, as in this case, the ease with which the manufacture and sale of counterfeit and infringing products can (and does) occur, as well as the speed at which the volume of those sales can increase, particularly in light of the ability to create such products, quite literally, "on-demand."

32.     Unsurprisingly, this has resulted in litigation.  For example, in 2018, a district court in the Eastern District of Wisconsin granted summary judgment (and then entered judgment) against POD company SunFrog for claims of direct and contributory infringement, including because SunFrog was directly involved with the sales and did "most of the legwork in the transaction" for the infringement.[7]

33.     The success of the BBC Products has resulted in significant counterfeiting, and the rise in popularity of and ease of access to POD technology has only heightened the amount of counterfeit and infringing products in the market.  While that fact is problematic itself, to make matters worse, Defendants set themselves apart from POD competitors by not only controlling nearly every aspect of the process of putting infringing and counterfeit products in consumers' hands, but failing to implement adequate safeguards to prevent or curb the intellectual property infringement for which they are responsible. Defendants attempt to hide behind automated processes and point to the high volume of users of Defendants' platforms to attempt to improperly insulate themselves from liability.

### III.    Defendants' Expansive Infringement and Counterfeiting of the BBC Trademarks

---

[7]     *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1037 (E.D. Wisc. 2018).

34.     Founded in 2002, Spreadshirt now claims to be one of the largest global POD companies with over $195 million in annual revenue.

35.     Defendants' growth has accelerated over the years, with Defendants adding a production site in Nevada in 2012 and growing to over 1,000 employees in 2020.

36.     Defendants take an active role in creating products, managing orders, and handling customer service, where (in Defendants' own words) Defendants' merchants should "relax" because Defendants will "do the selling for you." Once Defendants publish a product online, either through the Spreadshirt Marketplace, through a merchant's individual Shop, or through any other "connected" platform such as Defendants' Online Storefronts, Defendants "handle the selling" for merchants. As Defendants tout to prospective merchants, "From order and payment processing through customer service—don't worry, we've got your back."

37.     Defendants' business includes partnerships with serial counterfeiters.  With its vast online reach of hundreds of thousands of merchants, Defendants are directly involved with and actively contribute to the proliferation of infringing and counterfeit goods in this District and throughout the United States.

38.     Defendants unlawfully manufacture, advertise, market, and sell unauthorized and illegal products, including the counterfeit and infringing products that misappropriate and use without any authorization the BBC Trademarks (the "Counterfeit and Infringing Products") by applying marks identical to the BBC Trademarks to goods in respect of which the BBC Trademarks are registered, which causes confusion and deception in the marketplace.

39.     For example, Defendants create and manufacture various types of Counterfeit and Infringing Products, including counterfeit T-shirts, sweatshirts, stickers, hats, and bags.  Without Defendants, the Counterfeit and Infringing Products would not exist.  As discussed above, it is

Defendants, and not any third-party merchant, that exercise control over the publishing of both infringing designs to Defendants' Image Database as well as Counterfeit and Infringing products bearing those designs that have been pre-designed by merchant partners on Defendants' Online Storefronts.  That action is critical: indeed, it is the initial step toward propelling counterfeit goods into the stream of commerce.   Only after Defendants' act of publication is it possible for Counterfeit and Infringing products to then be purchased by an end-consumer, where Defendants take the baton again, and proudly "take[] care of production, delivery, and customer service." The extensive degree to which Defendants play a key role in creating and manufacturing the Counterfeit and Infringing Products and placing them into the market is discussed further below.

40.     Below are representative examples of Counterfeit and Infringing Products offered for sale through Defendants' Online Storefronts:

| Genuine BBC Products | Counterfeit and Infringing Products |
|---|---|
|  |  |
|  |  |

| Genuine BBC Products | Counterfeit and Infringing Products |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

| Genuine BBC Products | Counterfeit and Infringing Products |
|---|---|
|  |  |

41.    BBC has not licensed or authorized Defendants or Defendants' Online Storefronts to use the BBC Trademarks, and neither Defendants nor Defendants' Online Storefronts are authorized retailers of the genuine BBC Products.

42.    Defendants, without any authorization or license from BBC, have knowingly and willfully used and continue to use the BBC Trademarks in connection with the manufacture, advertisement, distribution, offering for sale, and sale of the Counterfeit and Infringing Products in and into the United States and Ohio over the Internet.

43.    Defendants, directly and through Defendants' Online Storefronts, offer shipping to the United States, including Ohio (in this District) and Defendants offered to sell and have sold counterfeit BBC products into the United States, including Ohio (in this District), which is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming BBC.

44.    Plaintiff confirmed on May 20, 2025, that counterfeit products using its trademarks were purchased from Defendants' website and subsequently shipped by Defendants to an Ohio address.

## IV.    Defendants' Direct Involvement and Key Role in the Counterfeiting and Infringement of the BBC Trademarks

45.    Defendants are not a passive print shop or online platform.  Rather, Defendants are

18

directly involved as active participants in all aspects of the creation, sale, and supply of Counterfeit and Infringing Products.   Among other actions taken by Defendants, and subject to further discovery regarding their direct involvement, Defendants: (1) provide trademarked content to end consumers to be applied to commercial products by Defendants in exchange for a fee, (2) exercise significant control over the creation, manufacturing, printing, selling, shipping, and customer service of Counterfeit and Infringing Products designed by their counterfeiting merchant partners or end consumers who have purchased infringing images designed by those partners from Defendants, and (3) engage in other tasks needed to bring the Counterfeit and Infringing Products into existence and into the market.

### A.    Defendants Supply and Use the BBC Trademarks

46.    Defendants' Image Database maintains and stores a multitude of designs and images for use in the creation of products that have been designed by Defendants' counterfeiting merchant partners and approved by Defendants. Upon information and belief, Defendants control and maintain Defendants' Image Database.

47.    Defendants' Image Database contains images that merchants themselves post to at least one of Defendants' Online Marketplaces on a pre-designed product, which Defendants then offer for sale on such marketplaces, while contemporaneously uploading those images to Defendants' Image Database for the purchase and use by end-consumers on other products available for sale by Defendants in Defendants' product catalogue.

48.    While Defendants require merchants who upload images to certify that they have all necessary legal rights to use those images, Defendants admit that they do not ensure that those certifications are accurate.  A simple search of Defendants' Image Database confirms Defendants' admission, as Defendants' Image Database contains BBC intellectual property, including BBC

Trademarks, that BBC has not licensed to Defendants for commercial use. By making the infringing images and designs in the Image Database available for such use, either by merchants through the Customize Tool in Shops or end consumers through the Marketplace, Defendants induce the infringement of that protected IP. For example:



*Images of BBC Marks supplied by Defendants for Infringement*

49.     Defendants profit from the use of these images.  As Spreadshirt.com explains, items sold on the internal Spreadshirt Marketplace—including those with infringing designs—have a "uniform design price for all product types in a product category." For example, a merchant who designed a "Men's Premium T-Shirt" featuring an infringing BBC Trademark would receive a "commission" of $3.25 of the total product price of USD $25.99 for every such product sold through the Spreadshirt.com Marketplace. Defendants would then store the merchant's posted design in Defendants' Image Database. Where a specific product-design combination is not pre-made by a merchant to be readily available on the Marketplace, users can instead use the Customize Tool to design their own product and add the infringing BBC Trademark design from Defendants' Image Database. In this scenario, the user who originally uploaded the infringing design would receive a commission of $2.00 of the total product price. As the site explains, "The design price in the Customize Tool is the same for all products: $2.00, regardless of how many times the design is used on the product." The rest of the cost of the item, whether pre-made and available on the Marketplace or created in the Customize Tool, goes to Defendants. What's more,

users who upload designs must have a "minimum balance" credited to their account in order to receive a payout—a minimum of $10 in the U.S.—which means that Spreadshirt can sell up to four items with user-uploaded designs and never actually pay the user any commission at all.

50.    Recognizing the "need to respect requests from intellectual property owners," Defendants state that they do not accept copyrighted designs and "may reject designs that show elements of protected intellectual property." But its Marketplace Terms and Conditions put the onus on users not to upload infringing content, rather than on Defendants, noting that while "Spreadshirt may, in its sole discretion, refuse to print, display, or sell any Designs or text that [users] submit," "Spreadshirt is not obligated to review any of [users'] submissions." Further, by the same Terms and Conditions, users "grant Spreadshirt and its subsidiaries and affiliates a non-exclusive, transferable, sublicensable, and worldwide license to use, store, display, reproduce, adapt, modify, translate, publish, publicly perform, advertise, market, publicly display, sell, and otherwise distribute Partner Content." In other words, Defendants do not agree to review the infringing designs uploaded to the Defendants' Image Database, but reserves the right to use and profit from those designs.

51.    Defendants' merchants have uploaded BBC Trademarks to Defendants' platform, with trivial or no modification, and Defendants have used those images to manufacture the Counterfeit and Infringing Products.

### B.    Defendants Manufacture the Counterfeit and Infringing Products

52.    Defendants exercise control over the manufacture and creation of the Counterfeit and Infringing Products, including the selection of items to be manufactured and the printing and manufacturing of Counterfeit and Infringing Products. Spreadshirt's U.S. production site, located

in Las Vegas, Nevada, is completely owned and controlled by Defendants, and handles printing and shipping for products designed and purchased through the Spreadshirt platform—including Counterfeit and Infringing Products—for distribution throughout the U.S.

53.     Spreadshirt claims that its "design review team" examines "thousands and thousands of designs each day" to ensure those designs do not violate its legal and community guidelines, even if doing so creates a "logjam." Yet at the same time, Defendant proudly states that it offers "instant publishing" to bypass those same reviewers, permitting a newly uploaded design to "be available immediately in the Marketplace." Further, Defendant all but encourages users to upload infringing designs, stating that while on the one hand, Spreadshirt will reject designs coming from third-party platforms, it will nonetheless allow the uploading of such designs if they're "reworked prior to uploading." This contradictory policy and lack of transparency is unsurprising, given the rampant intellectual property infringement that occurs on Defendants' site.

54.     In sum, Defendants manufacture and create Counterfeit and Infringing Products that would not have existed but for Defendants' enterprise, and exercise control over every step of the process.

## V.     Defendants Actively Discourage the Enforcement of Intellectual Property Rights

55.     Despite Defendants' direct involvement and critical role in the manufacture, creation, and distribution of the Counterfeit and Infringing Products, Defendants seek to disclaim any responsibility or liability with respect to their infringing and non-compliant conduct.  Indeed, Defendants' Terms of Service, Intellectual Property Policy, and disclosures are at odds with Defendants' actual practices and corresponding legal obligations.

56.     As established above, Defendants control the infringement and counterfeiting process, triggering certain legal obligations.  Defendants maintain Defendants' Image Database,

advertise and sell infringing BBC Marks and designs, and encourage others to use them, including on the Spreadshirt "Create" tool. This allows for a never-ending amount of uploaded content that infringes intellectual property rights to be applied to goods in digitized form via its "Create" tool. Defendants also oversee the printing process that prints the infringing BBC Marks and designs onto the goods offered via Defendants' product catalogue, as well as the other uploaded infringing content onto such goods, handle the Counterfeit and Infringing Products after they come off the printers, handle the bagging and shipment of those products, process payments, and handle any customer service issues related to the sale of the Counterfeit and Infringing Products. Additionally, Defendants vigorously publish, advertise, and offer for sale goods bearing the BBC Trademarks through Defendants' Online Storefronts, and in exchange, receive revenue from the sale of the Counterfeit and Infringing Products.

57.     Defendants also attempt to portray Spreadshirt as safeguarding intellectual property rights while transferring all responsibility to do so to third parties. For example, Spreadshirt's Legal Guidelines for Designs state that Spreadshirt "will **not** print Trademarks, names or logos for companies," and warns that designs in violation "will be removed immediately without warning and not printed." But Defendants' "Shop Partners" Terms and Conditions state that users alone "are responsible for Partner Content," including verifying "that Partner Content is either owned by you [the user], or you have written authorization from the owner," while at the same time disclaiming that "Spreadshirt is not obligated to review any of your submissions." In those same Terms and Conditions, Defendants then pass the buck to the intellectual property owners to protect their rights—despite Defendants' own acknowledgment that "thousands and thousands of designs" are uploaded to the Spreadshirt site "each day"—by adding that if Defendants "have reason to suspect that your behavior has violated any laws or rights of third parties, we may take actions

including but not limited to…providing third parties with information about Partner Content **upon their request**." These words are inconsequential.

58.     Defendants actively discourage any reporting of intellectual property infringement and make it difficult for intellectual property owners to report such incidents, which is in contrast to similar competitor POD services like "Amazon Merch", which has a dedicated Intellectual Property Violation form for rights holders to report instances of infringement. For example:

   a.     Defendants do not have a specific Trademark violation form, or even a dedicated website for reporting suspected violations. Instead, the email verify@spreadshirt.com–which Spreadshirt states goes to their "legal service"—can be found on various webpages on the Spreadshirt site, sometimes without so much as a hyperlink. This same email is offered for users whose "design or text is removed, and [who] believe it has been removed in error," as well as anyone who "suspect[s] a design or text of being illegal." There is no dedicated reporting page for infringement on Spreadshirt's website.

   b.     Even Spreadshirt's Digital Millenium Copyright Act ("DMCA") Notice, applicable to copyright only, provides only the Pennsylvania address, fax number, and "verify@spreadshirt.com" email for its Copyright Agent, noting "only DMCA notices should go to the Copyright Agent; any other feedback, comments, requests for technical support, and other communications should be directed to Spreadshirt customer service." No similar page exists for reporting Trademark infringement.

   c.     The Legal Guidelines for Designs and DMCA Policy contains a list of

only non-binding—and unfollowed—bullet points about what Defendants "will not" print. Ironically, the "Trademarks" bullet states: "For example, you cannot use the name Coca Cola, Coke 'It's the Real Thing' or the design from the cans." Yet a basic search of Defendants' Design Database reveals that these examples are, in fact, offered as designs on Defendants' site.





*Examples of designs featuring infringing Coca Cola Trademarks on Defendants' website.*

59.     Defendants' "reporting" procedures are head-in-the-sand tactics to stifle reporting, for Defendants' financial benefit.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

60.     BBC repeats and incorporates by reference its allegations contained in paragraphs 1–59 of this Complaint.

61.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered BBC Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of counterfeit and infringing goods.  The BBC Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from BBC's products provided under the BBC Trademarks.

62.     Defendants have manufactured, sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the BBC Trademarks without BBC's permission.  Alternatively, Defendants have caused to be manufactured, sold, offered to sell, marketed, distributed, and advertised, and are still causing to sell, offer to sell, market, distribute, and advertise products in connection with the BBC Trademarks without BBC's permission.

63.     Defendants are directly liable for the actions described above.

64.     Alternatively, Defendants are vicariously and/or contributorily liable for the actions described above.  Defendants intentionally induce others to infringe the BBC Trademarks.

65.     BBC is the registered owner of the BBC Trademarks and the official source of BBC Products.  The United States Registrations for the BBC Trademarks (Exhibit 1) are in full force and effect.  Upon information and belief, Defendants have knowledge of BBC's rights in the BBC Trademarks and are willfully infringing and intentionally using counterfeits of the BBC Trademarks. Defendants' willful, intentional, and unauthorized use of the BBC Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

66.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

67.     The injuries and damages sustained by BBC have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit BBC products.  Alternatively, the injuries and damages sustained by BBC have been directly and proximately caused by Defendants' causing of the wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit BBC products.

68.     BBC has no adequate remedy at law, and, if Defendants' actions are not enjoined, BBC will continue to suffer irreparable harm to its reputation and the goodwill of its well-known BBC Trademarks.

**SECOND CAUSE OF ACTION**
**TRADEMARK DILUTION (15 U.S.C. § 1125(c))**

69.     BBC repeats and incorporates by reference its allegations contained in paragraphs 1–59 of this Complaint.

70.     BBC has engaged in extensive nationwide advertising, promotion, and use of the BBC Trademarks for many years.  BBC has had massive sales of goods and services bearing such marks for decades.

71.     The BBC Trademarks have for decades received extensive unsolicited media attention nationwide.  Such extensive and frequent media attention and commercial success has had a substantial impact on the public and has long created an association in the minds of consumers between BBC and the BBC Marks, such that these marks are famous and were famous nationwide before Defendants commenced their unauthorized use of those marks.

72.     Defendants' actions are likely to cause dilution by blurring and dilution by tarnishment of the distinctive quality of those trademarks, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

73.     Defendants are directly, vicariously, and/or contributorily liable for the actions described above.

74.     The actions of Defendants described above have, at all times relevant to this action, been willful.

75.     As a direct and proximate result of the actions of Defendants as alleged above, BBC has been and will continue to be damaged and irreparably harmed.

76.     BBC has no adequate remedy at law.

## THIRD CAUSE OF ACTION
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

77.     BBC repeats and incorporates by reference its allegations contained in paragraphs 1–59 of this Complaint.

78.     Defendants' promotion, marketing, offering for sale, and sale of counterfeit BBC products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with BBC or the origin, sponsorship, or approval of Defendants' counterfeit BBC products by BBC.  Alternatively, Defendants' causing of the promotion, marketing, offering for sale, and sale of counterfeit BBC products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with BBC or the origin, sponsorship, or approval of Defendants' counterfeit BBC products by BBC.

79.     By using the BBC Trademarks in connection with the sale of counterfeit BBC products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit BBC products.

80.     Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit BBC products to the general public under 15 U.S.C. §§ 1114, 1125.

81.     BBC has no adequate remedy at law, and, if Defendants' actions are not enjoined, BBC will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## FOURTH CAUSE OF ACTION
## UNFAIR COMPETITION

82.     BBC repeats and incorporates by reference its allegations contained in paragraphs 1–59 of this Complaint.

83.     BBC has not licensed or authorized Defendants to use the BBC Trademarks and none of the Defendants are authorized retailers of genuine BBC Products.

84.     Defendants knowingly and intentionally trade upon BBC's reputation and goodwill by making representations, selling and/or offering for sale products in connection with BBC Trademarks, with the purpose of deceiving the public. Alternatively, Defendants knowingly and intentionally trade upon BBC's reputation and goodwill by causing products to be offered for sale and/or sold in connection with the BBC Trademarks.

85.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit and Infringing Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with BBC or the origin, sponsorship, or approval of Defendants' Counterfeit and Infringing products by BBC. Alternatively, Defendants' causing of the promotion, marketing, offering for sale, and sale of Counterfeit and Infringing Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with BBC or the origin, sponsorship, or approval of Defendants' Counterfeit and Infringing Products by BBC.

86.     Defendants knew, or should have known, that their promotion, marketing, offering for sale, and sale of counterfeit BBC products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public. Alternatively, Defendants knew, or should have known, that their causing of promotion, marketing, offering for sale, and sale of counterfeit BBC products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

87.     In fact, Defendants have fraudulently represented by their statements and actions

that the Counterfeit and Infringing Products are BBC's products including, for example, by using deceptive advertising practices in connection with the Defendants' Online Storefronts, such as advertising infringing designs under names such as "Billionaire Boys Club Gifts," and taking other steps to deceive and confuse the consuming public.

88.     On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing Defendants' identities and using Defendants' Online Storefronts to operate their illegal counterfeiting operations.

89.     BBC has no adequate remedy at law, and Defendants' conduct has caused BBC to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, BBC will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

<b>PRAYER FOR RELIEF</b>

WHEREFORE, BBC prays for judgment against Defendants as follows:

1.     An injunction enjoining Defendants and their employees, agents, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, retailers, wholesalers, manufacturers, vendors, successors, assigns, and all persons acting for, with, by, through, under, or in active concert with them from:

      a.     using the BBC Trademarks in any way, including without limitation for any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the manufacture, distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine BBC product or is not authorized by BBC to be sold in connection with the BBC Trademarks;

      b.     passing off, inducing, or enabling others to sell or pass off any product as a genuine BBC product or any other product produced by BBC that is

31

not BBC's or not produced under the authorization, control, or supervision of BBC and approved by BBC for sale under the BBC Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit and Infringing Products are those sold under the authorization, control, or supervision of BBC, or are sponsored by, approved by, or otherwise connected with BBC;

d. further infringing the BBC Trademarks and damaging BBC's goodwill;

e. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for BBC, nor authorized by BBC to be sold or offered for sale, and which bear any Plaintiff trademark, including the BBC Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof;

f. using, linking to, transferring, selling, exercising control over the Defendants' Online Storefronts, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit BBC Products; and

g. operating and/or hosting websites that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the BBC Trademarks or BBC or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine BBC Product or not authorized by BBC to be sold in connection with the BBC Trademark; and

       h.      assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the subparagraphs above.

2.      An order directing Defendants to destroy all marketing, advertising, or promotional materials depicting or referring to such Counterfeit and Infringing Products, confirm such destruction in writing to BBC, and provide to BBC the identity and complete contact information and payee information for all persons and entities that made, produced, or advertised or sold the Counterfeit and Infringing Products.

3.      An order requiring Defendants to account for and pay to BBC all profits arising from the unlawful acts herein alleged, and an increasing of such profits for payment to BBC as provided by 15 U.S.C. § 1117 and any other applicable statute or law.

4.      An order requiring Defendants to pay BBC statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the BBC Trademarks).

1.      Compensatory damages according to proof.

2.      Punitive damages according to proof.

3.      Reasonable attorneys' fees and costs.

4.      Prejudgment interest on all damages awarded by this Court.

5.      An order awarding any and all other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

Dated: May 22, 2025         Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By:   /s/ *Richard J. Pocker*
       Richard J. Pocker (#0026165)
       rpocker@bsfllp.com
       300 South Fourth Street Suite 800
       Las Vegas, NV 89101
       Telephone: (702) 382-7300

       Matthew Schwartz (*pro hac vice* forthcoming)
       mschwartz@bsfllp.com
       Andrew Villacastin (*pro hac vice* forthcoming)
       avillacastin@bsfllp.com
       55 Hudson Yards, 20th Fl.
       New York, NY 10001
       Telephone: (212) 446-2300

       Katie Kavanaugh (*pro hac vice* forthcoming)
       kkavanaugh@bsfllp.com
       2029 Century Park East, 1520
       Los Angeles, CA 90067
       Telephone: (213) 629-9040

       *Attorneys for Plaintiff*