**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

BBC Ice Cream, LLC,

*Plaintiff*,

-against-

sprd.net AG, Spreadshirt, Inc., Spreadshirt Print on
Demand GmbH, and JOHN DOES 1-10,

*Defendants*.

Case No. 1:25-cv-01055-BMB

Judge Bridget M. Brennan

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS OR TRANSFER**

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES ................................................................................ vi

SUMMARY OF THE ARGUMENT ....................................................................... vii

BACKGROUND ....................................................................................................... 1

    A.   Print-on-Demand's Role In Counterfeiting. ................................................. 1

    B.   Defendants Shipped the Infringing Products Into Ohio. ............................... 2

STANDARD OF REVIEW ........................................................................................ 3

ARGUMENT ............................................................................................................. 4

I.    The Court Has Personal Jurisdiction Over Defendants Because Defendants Have Minimum Contacts With Ohio, This Action Is Related to Those Contacts, and Jurisdiction Is Reasonable. ........................................................................................... 4

    A.   Defendants Rely on Outdated Law; the Only Relevant Question Is Constitutional Due Process. ........................................................................................................... 4

    B.   Defendants' Substantial Business in Ohio Creates Sufficient Minimum Contacts to Permit Jurisdiction. ............................................................................................... 5

    C.   Defendants' Shipment of BBC's Counterfeit Products Relates to Their Ohio Contacts Because They Systematically Serve the State. ......................................................... 12

    D.   Defendants' Repeated Contacts With Ohio Make Personal Jurisdiction Reasonable. . 14

II.    The Parent Company Defendants Should Not Be Dismissed Because They Control Spreadshirt, Inc. ...................................................................................................... 16

III.   The Court Should Deny the Transfer Motion Because the Other Districts Do Not "Make More Sense" Than the Northern District of Ohio. .................................................... 17

    A.   The Eastern District of Pennsylvania Has No Connection to This Case and is Further From Defendants' Headquarters Than This District. ............................................. 18

    B.   The District of Delaware Has No Connection to This Case and Has a Busier Docket. 18

    C.   The Southern District of New York Has No Connection to This Case and Has a Busier Docket. ................................................................................................................. 19

CONCLUSION ........................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abercrombie & Fitch Co. v. Ace Eur. Grp., Ltd.*,
    2012 WL 2995171 (S.D. Ohio July 23, 2012) ........................................................................ 19

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*,
    503 F.3d 544 (6th Cir. 2007) ................................................................................................ 14

*AMB Media, LLC v. OneMB, LLC*,
    2024 WL 2052151 (6th Cir. May 8, 2024) .................................................................... passim

*Ardent Techs. Inc. v. Advent Servs LLC*,
    2023 WL 5588547 (S.D. Ohio Aug. 29, 2023) ...................................................................... 18

*Bird v. Parsons*,
    289 F.3d 865 (6th Cir. 2002) .......................................................................................... passim

*Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*,
    42 F.4th 948 (8th Cir. 2022) .................................................................................................... 8

*Carrier Corp. v. Outokumpu Oyj*,
    673 F.3d 430 (6th Cir. 2012) .................................................................................. 5, 6, 16, 17

*Dugger v. Honeywell Int'l*,
    2021 WL 5961624 (N.D. Ohio Dec. 16, 2021) ...................................................................... 6

*FKA Distrib. Co. v. Highflyer, LLC*,
    2025 WL 97612 (E.D. Mich. Jan. 13, 2025) ........................................................................... 8

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021) ........................................................................................................ passim

*Grado v. Med., Indus., and Sci. Prods. Corp.*,
    2025 WL 2227879 (S.D. Ohio Aug. 5, 2025) ......................................................................... 5

*Gronski v. InContact, Inc.*,
    774 F. Supp. 3d 873 (E.D. Mich. 2025) .................................................................................. 6

*IHF Ltd. v. Myra Bag*,
    391 F. Supp. 3d 760 (N.D. Ohio 2019) ................................................................................... 4

*Illinois v. Hemi Grp. LLC*,
    622 F.3d 754 (7th Cir. 2010) ................................................................................................ 15

*In re E. Palestine Train Derailment*,
    2024 WL 1096062 (N.D. Ohio Mar. 13, 2024) .......................................................... 5, 14, 15

*Jamhour v. Scottsdale Ins. Co.*,
    211 F. Supp. 2d 941 (S.D. Ohio 2002) ................................................................. 17

*Malone v. Stanley Black & Decker, Inc.*,
    965 F.3d 499 (6th Cir. 2020) ....................................................................... 3, 10

*Neal v. Janssen*,
    270 F.3d 328 (6th Cir. 2001) ............................................................................. 5

*Neogen Corp. v. Neo Gen Screening, Inc.*,
    282 F.3d 883 (6th Cir. 2002) ............................................................... 7, 8, 9, 13

*Picker Int'l, Inc. v. Travelers Indem. Co.*,
    35 F. Supp. 2d 570 (N.D. Ohio 1998) ............................................................... 19

*Smith v. Swaffer*,
    566 F. Supp. 3d 791 (N.D. Ohio 2021) ............................................................... 5

*Sullivan v. LG Chem, Ltd.*,
    79 F.4th 651 (6th Cir. 2023) ................................................................... passim

*Tobien v. Nationwide Gen. Ins. Co.*,
    133 F.4th 613 (6th Cir. 2025) ..................................................................... 3, 17

*U.S. v. Wahib*,
    636 F. Supp. 3d 816 (N.D. Ohio 2022) ........................................................ 10, 13

*W. Am. Ins. Co. v. Potts*,
    1990 WL 104034 (6th Cir. 1990) ..................................................................... 17

*Walden v. Fiore*,
    571 U.S. 277 (2014) ......................................................................................... 14

*Zahara Ariel LLC v. Lionsgate Entm't Corp.*,
    2023 WL 4706188 (S.D. Ohio June 14, 2023) .................................................... 5

*Zoya Co. v. NIOS, Inc.*,
    2013 WL 4511922 (N.D. Ohio Aug. 23, 2013) ................................................. 15

**Statutes**

28 U.S.C. § 1404 ...................................................................................................... 3

28 U.S.C. § 1404(a) ............................................................................................ vi, 3

O.R.C. § 2307.382 .................................................................................................. 4

Ohio Rev. Code § 2307.382(C) ............................................................................... 5

iv

**Rules**

Federal Rule of Procedure 12(b)(2) ................................................................................ vi

## **STATEMENT OF THE ISSUES**

1. Defendants Spreadshirt, Inc., sprd.net AG, and Spreadshirt Print on Demand GmbH ("Defendants") have an Ohio-based employee, ship products into Ohio—including products infringing Plaintiff's trademarks—maintain active websites that support Ohio citizens, and derive significant revenue from products they sell in Ohio. Are these Ohio contacts sufficient such that the exercise of personal jurisdiction over Defendants in this District would not offend traditional notions of fair play and substantial justice under the United States Constitution?

2. Defendants sprd.net AG and Spreadshirt Print on Demand GmbH exert complete control over Defendant Spreadshirt Inc., including by sharing board members, employees, and production facilities, and otherwise deliberately portraying themselves as a single global enterprise. Because Defendants functionally operate as one unit, may the Court exercise jurisdiction over the foreign Defendants?

3. Defendants' proposed alternative venues—the Eastern District of Pennsylvania, the District of Delaware, and the Southern District of New York—have no meaningful relationship to this case, and all districts are further from Defendants' Greensburg headquarters than this District and this Court. Are those districts more appropriate than adjudicating in this District?

## SUMMARY OF THE ARGUMENT

Plaintiff BBC Ice Cream, LLC ("BBC") respectfully submits this memorandum of law in opposition to Defendants' Spreadshirt, Inc., sprd.net AG, and Spreadshirt Print on Demand GmbH (collectively, the "Defendants" or "Spreadshirt") Motion to Dismiss under Federal Rule of Procedure 12(b)(2) or to transfer under 28 U.S.C. § 1404(a). Dkt. 12. Defendants do not dispute that counterfeit goods bearing BBC's protected trademarks were purchased from their website, that those counterfeit goods were shipped by them into Ohio through a sales and distribution process that they control, or that they profited from these illegal sales. Instead, based solely on self-serving and untested factual assertions that focus on the recent sales of BBC products described in the Complaint, Defendants assert that they lack "sufficient minimum contacts with Ohio" for the Court "to subject [them] to specific jurisdiction []here." Dkt. 12-1 at vii.

Defendants' focus on individual sales of specific goods misinterprets the relevant test for establishing personal jurisdiction, and obscures that, for years, Defendants have intentionally and profitably exploited the Ohio market by advertising, selling, and shipping products into this State. Defendants' substantial and continuous business in Ohio, which includes but is not limited to their involvement in the sales of goods infringing Plaintiff's trademarks, easily meets the requirements for personal jurisdiction, and the Court should deny Defendants' motion in its entirety. *See AMB Media, LLC v. OneMB, LLC*, 2024 WL 2052151, at *7 (6th Cir. May 8, 2024) ("[L]ongstanding precedent establishes that a company's choice to welcome customers from and regularly sell products into a state subjects the company to that state's jurisdiction . . . .").

## BACKGROUND

### A.        Print-on-Demand's Role In Counterfeiting.

Print-on-Demand ("POD") involves the creation of products after an order is placed, allowing sellers to avoid having to stockpile inventory that may go unsold.  Compl. ¶ 29.  Today, users can, within hours, upload an image, design a product, have it produced to their specifications, and then have the product shipped to them.  Over the past few years, POD businesses have exploded—fueled by advances in printing, seamless online purchasing, and fast shipping.  *Id.* ¶¶ 30-33.

But POD is not without its costs, and POD platforms such as Defendants' have become the latest frontier for widespread counterfeiting.  *Id.* ¶¶ 3-5.  Without proper safeguards and an appropriate respect for the law, POD technology can be used, and is being used, to design, create, sell, and ship counterfeit products direct to consumers.  *See id.* ¶¶ 8, 38-39, 43.  In short, the POD business model enables and operationalizes large-scale counterfeiting.

Defendants are part of the POD problem.[1]  *See id.* ¶¶ 29-59.  While Defendants increase their sales of counterfeit products in various ways, *see id.* ¶¶ 6-11, 29-59, three activities are most relevant to this jurisdictional motion:

*First*, Defendants permit the uploading of infringing images to their website, where those images are then used by Defendants to produce counterfeit goods.  *Id.* ¶¶ 46-51.

*Second*, Defendants admittedly ship counterfeit products nationwide, including into this District, as part of their regular course of business.  *Id.* ¶¶ 43-44, 52, 56; Dkt. 12-2 ¶ 5.  As just one example, Defendants' website allows users to select "Ohio" from a drop-down menu, enter

---

[1] As discussed in greater detail below, the three Defendants all share the same leadership and functionally operate as one business.

1

any quantity of goods—including bulk orders containing tens of thousands of individual products—and receive instant shipping quotes and estimated delivery dates for Standard, Premium, or Express Shipping into Ohio.  *See* Ex. A.[2]

*Third*, Defendants promote and host their "Spreadshop" service—a turnkey e-commerce platform allowing users to design and sell goods via personalized "Spreadshops"—in this State. Compl. ¶ 6(b).  Defendants have hosted, and continue to host, countless Spreadshops for Ohio individuals, businesses, and associations.  These include the Cleveland Institute of Music; the Ohio State Beekeepers Association; the Cleveland Darter Club; the Cuyahoga Astronomical Association; the Ohio Farm Bureau; the Ohio Media School; Ohio Roller Derby; Cleveland Whiskey Gear; and Magic Rabbit Whiskey, to name a few.  *See* Ex. B.[3]

Using these three features—uploading, shipping, and Spreadshops—Defendants have fulfilled tens of millions of orders with sales of hundreds of millions of dollars.  Compl. ¶ 5.

### B.       Defendants Shipped the Infringing Products Into Ohio.

BBC is the fashion label and retailer for thirteen-time Grammy award-winning artist and producer Pharrell Williams.  Compl. ¶ 1.  BBC's products are recognized all over the world and sold at exclusive licensed retailers, including two U.S. flagship stores, a brick-and-mortar location in Hong Kong, and high-end department stores across the United States.  *Id.* ¶ 21.  BBC owns and maintains its active, properly registered trademarks.  *Id.* ¶ 23.

Defendants are not licensed or authorized to use BBC's trademarks, but that has not stopped them from profiting off them.  *Id.* ¶ 38.  Without any authorization, license, or permission, Defendants have knowingly and willfully used—and continue to use—BBC's trademarks in

---

[2] References to "Ex." are to exhibits to the Declaration of Matthew L. Schwartz, filed concurrently hereto.

[3] Defendants also maintain an online Marketplace and plug-in Connect service.  Compl. ¶¶ 6(a), (c).

connection with the manufacture, advertisement, distribution, offering for sale, and sale of the counterfeit and infringing products in and into the United States and Ohio. *Id.* ¶¶ 40, 42, 48-49. Moreover, Defendants have offered to sell—and have sold—counterfeit BBC products into the United States, including across Ohio and in this District. *Id.* ¶¶ 43-44. As an example of those many sales, Defendants admit to having shipped three of Plaintiff's counterfeit products to Ohio (the "Infringing Products"). Dkt. 12-2 ¶¶ 10, 14.

## STANDARD OF REVIEW

A plaintiff need only make "a prima facie case for personal jurisdiction." *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023).[4] The Sixth Circuit has held that a plaintiff's 12(b)(2) burden is "relatively slight," *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020), and that courts "must view the pleadings and affidavits in a light most favorable to the plaintiff and not weigh the controverting assertions of the party seeking dismissal," *Sullivan*, 79 F.4th at 660.

Motions to transfer under 28 U.S.C. § 1404 require that the transferee district be one in which a civil action "might have been brought" in the first instance, and that "the convenience of parties and witnesses" and "the interest of justice" strongly favor transfer. 28 U.S.C. § 1404(a). Such motions are disfavored, however, and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 619 n.2 (6th Cir. 2025).

---

[4] All quotations omit citations and immaterial punctuation unless otherwise indicated.

## ARGUMENT

I.  **The Court Has Personal Jurisdiction Over Defendants Because Defendants Have Minimum Contacts With Ohio, This Action Is Related to Those Contacts, and Jurisdiction Is Reasonable.**

Defendants' conduct in and deliberate contacts with Ohio—selling to consumers here, shipping goods (including counterfeit goods) here, hosting Spreadshops here, and maintaining an employee here, among other things—subjects them to personal jurisdiction in this District.  The Sixth Circuit "has developed a three-part standard, often termed the *Mohasco* test, to assess specific personal jurisdiction." *AMB Media*, 2024 WL 2052151, at *3.  Under this test: (1)"'[f]irst, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state'"; (2)"'[s]econd, the claims must arise out of or relate to the defendants' contacts with the forum'"; and (3)"'[t]hird, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction over the defendant reasonable.'" *Id*. (quoting *Sullivan*, 79 F.4th at 670).  Though "[e]ach part of the *Mohasco* standard represents an independent requirement," *AMB Media*, 2024 WL 2052151, at *3, where plaintiffs establish a "prima facie case regarding purposeful availment and relatedness, an inference arises that this [reasonableness] third factor is also present," *id.* at *7.

A. **Defendants Rely on Outdated Law; the Only Relevant Question Is Constitutional Due Process.**

As a threshold matter, Defendants incorrectly argue that because Ohio's long-arm statute, O.R.C. § 2307.382, "is more restrictive than constitutional due process demands," BBC "must establish one of the nine statutory criteria [under the long-arm statute] to exercise personal jurisdiction over a non-resident defendant under Ohio law."  Mot. at 12 (citing *IHF Ltd. v. Myra Bag*, 391 F. Supp. 3d 760, 767 (N.D. Ohio 2019)).  That argument is wrong because it relies on

4

outdated authority: "In April 2021, the Ohio Legislature amended Ohio's long-arm statute to make it coterminous with the limits of due process under the United States Constitution." *In re E. Palestine Train Derailment*, 2024 WL 1096062, at *5 (N.D. Ohio Mar. 13, 2024); *see also Smith v. Swaffer*, 566 F. Supp. 3d 791, 806 (N.D. Ohio 2021); *see* Ohio Rev. Code § 2307.382(C) ("[A] court may exercise personal jurisdiction over a person on any basis consistent with ... the United States Constitution.").

Here, there is no dispute that the relevant events and filings occurred well after the 2021 amendment.  Thus, "separate analyses are unnecessary" and the Court need "engage[] only in the constitutional analysis" here.  *Grado v. Med., Indus., and Sci. Prods. Corp.*, 2025 WL 2227879, at *7 (S.D. Ohio Aug. 5, 2025); *see also Zahara Ariel LLC v. Lionsgate Entm't Corp.*, 2023 WL 4706188, *2-3 (S.D. Ohio June 14, 2023).  The only question for this Court, then, is "whether exercising personal jurisdiction violates constitutional due process."[5] *Zahara*, 2023 WL 4706188 at *2.  As BBC demonstrates both in the Complaint and below, it does not.

### B. Defendants' Substantial Business in Ohio Creates Sufficient Minimum Contacts to Permit Jurisdiction.

BBC has easily shown that Defendants' minimum contacts with this District are constitutionally sufficient to satisfy the first *Mohasco* factor.  As the Sixth Circuit has held, "[e]ven a single act by a defendant directed toward the relevant forum that gives rise to a cause of action can support a finding of minimum contacts."  *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 451 (6th Cir. 2012) (citing *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001)).  As discussed below,

---

[5] Even if Ohio law applied, the Court has jurisdiction over Defendants under Ohio Rev. Code § 2307.382(A)(1), which grants specific jurisdiction over a defendant that "transact[s] any business in this state."  As explained below, Defendants' business in this state includes an employee; regular and sustained shipments; various Spreadshops; and sales.  *See Smith*, 566 F. Supp. 3d at 806 ("The Ohio Supreme Court has noted that the word 'transact' means 'to carry on business,' and 'to have dealings,' and it is broader than the word 'contract.").

Defendants conduct substantial business in Ohio, direct their activities toward Ohio, exploit Ohio's marketplace, and even maintain an employee in Ohio—more than enough to give Defendants "fair warning" and "knowledge that [their] particular activit[ies] may subject [them] to the jurisdiction of a foreign sovereign." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 360 (2021).

**Employment**.  Defendants admit they have an employee who "works primarily out of their home in Ohio[.]"  Dkt. 12-2 ¶ 7.  A single remote employee is sufficient to establish minimum contacts.  *See, e.g.*, *Dugger v. Honeywell Int'l,* 2021 WL 5961624, at *5 (N.D. Ohio Dec. 16, 2021) (finding minimum contacts where Texas-based manager "supervised [plaintiff's] Ohio-based activities" including "completing her performance review, deciding which client meetings she could take, and setting her compensation and commissions");  *see also Gronski v. InContact, Inc.*, 774 F. Supp. 3d 873, 884 (E.D. Mich. 2025) (finding minimum contacts from defendant's "supervision of" remote employee in forum, noting "increased recognition from and within the Sixth Circuit that out-of-state defendants purposefully avail themselves of the forum through 'ongoing'—as opposed to isolated or 'one shot'—remote work relationships with an in-state plaintiff").  Defendants' admission that they retain an Ohio-based employee is, on its own, sufficient to establish minimum contacts.  *See Carrier*, 673 F.3d at 451 ("Even a single act … can support a finding of minimum contacts.").

**Shipping**.  Defendants do not deny (because they cannot) that they make substantial sales to citizens of Ohio or that they ship a substantial number of products into this State.  Defendants admit they regularly "ship[] purchased products to Ohio," and that "separate products … potentially related to the BBC Marks [] were shipped to Ohio."  Dkt. 12-2 ¶¶ 5, 10.  Further, Defendants' website states that they ship products to all 50 states, offer express shipping "to the

48 contiguous states," and allow customers to calculate shipping charges into the state without even placing an order.  *See* Ex. A.  Once a potential customer selects "Ohio" from a drop-down menu, they can select how many products they would like to ship into the state.  Ex. A at 1. Defendants then display the estimated shipping costs and delivery dates across three levels: Standard Shipping into Ohio; Premium Shipping into Ohio; and Express Shipping into Ohio.  *Id.*

These details demonstrate Defendants have "deliberately reached out beyond [their] home" to "exploit[] a market in the forum State."  *Sullivan*, 79 F.4th at 671.  The Sixth Circuit has long found that where a website's interactive features enable outreach to the forum and exploitation of its market—as Defendants' website does—such interactivity supports a finding of purposeful availment.  *See Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) ("The operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state under the first *Mohasco* factor 'if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.'") (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002)).  Defendants cannot dispute that when they ship products into this State, they are purposefully availing themselves of the privilege of doing business in Ohio: "After all, when a company has shipped products to [the forum] only after it had structured its sales activity in such a manner as to invite orders from that forum and others and developed the capacity to fill them, that entity cannot now point to its customers in [the forum] and tell us, 'It was all their idea.'"  *AMB Media*, 2024 WL 2052151 at *6.

Defendants argue "even if Spreadshirt blocked Ohio residents from using its website, uploading its images, or purchasing products, it still could wind up *sending a product* into Ohio at the request of a customer who lived outside Ohio."  Mot. at 7 (emphasis added).  That hypothetical is counterfactual, however, and in any event the Supreme Court rejected the same argument in

7

*Ford*.  *See* 592 U.S. at 366 ("Ford argues [] the plaintiffs' claims would be precisely the same if Ford had never done anything in Montana and Minnesota.  Of course, that argument merely restates Ford's demand for an exclusively causal test of connection—which we have already shown is inconsistent with our caselaw.").  Defendants' hypothetical draws on holdings from "stream of commerce cases," but those precedents "do not govern cases where the defendant, as here, does business in the forum state by selling and shipping its products there."  *AMB Media*, 2024 WL 2052151 at *6 n.5.

Next, Defendants argue the "only activity that in any way touches Ohio is the fact that the New York purchaser requested Spreadshirt to send its purchase into Ohio," and that "a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant."  Mot. at 7-8 (quoting *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 950 (8th Cir. 2022) ("*BASIC*")).  This argument is misplaced for several reasons.

*First*, it is not true that the Infringing Products are Defendants' "only activity that in any way touches Ohio."  Mot. at 7.  As discussed above and below, Defendants maintain many contacts with Ohio.  *See also* Dkt. 12-2 ¶¶ 7, 5.  Further, courts in this Circuit have rejected such single-sale arguments where the sale was otherwise tied to "regular sales to" the forum state.  *See, e.g.*, *FKA Distrib. Co. v. Highflyer, LLC*, 2025 WL 97612, at *2 n.2 (E.D. Mich. Jan. 13, 2025) (rejecting defendant's argument that "a single purchase by the Plaintiff cannot create personal jurisdiction" because plaintiff's "allegations regarding regular sales to Michigan suffice to establish personal jurisdiction").  Such holdings make sense given the Sixth Circuit's recognition that a defendant cannot "mail [product] to and accept payment from customers with [forum state] addresses without intentionally choosing to conduct business in" the forum state.  *Neogen Corp.*, 282 F.3d at 892.

*Second*, Defendants' reliance on *BASIC* is unconvincing.  Mot. at 8.  In *BASIC*, the plaintiff never "alleged that Zazzle took such purposeful, targeted action towards Missouri or Missouri consumers."  42 F.4th at 953 ("All BASIC alleges is that a Missouri consumer accessed Zazzle's nationally available website and purchased a shirt.").  Here, BBC *has* alleged—and Defendants *admit*—purposeful, targeted actions towards Ohio through employment and shipping, as discussed above and in BBC's Complaint.  Compl. ¶¶ 19, 24, 42-44.  And as explained below, Defendants' contacts run much deeper.

**Interactive Website**.  As discussed above, Defendants' website is sufficiently interactive to create minimum contacts.   But in addition to those interactive features, Defendants' website also contains a drop-down menu and calculations of express shipping costs for products sent to Ohio, and Defendants also encourage Ohioans to create, upload, and sell products on their own Spreadshops.  Compl. ¶ 8.  Among Defendants' countless Ohio Spreadshops are the Cleveland Institute of Music; the Ohio State Beekeepers Association; the Cleveland Darter Club; the Cuyahoga Astronomical Association; the Ohio Farm Bureau; the Ohio Media School; Ohio Roller Derby; Cleveland Whiskey Gear; and Magic Rabbit Whiskey.  *See* Ex. B.  Further, Defendants host Ohio design firms, including Cleveland-based graphic design company Deleon Designs, Ex. C at 1-3, and promote the sale of Ohio-related merchandise, including numerous products related to the Cleveland Browns and Cleveland Guardians, *id.* at 1-8.  Defendants' website is thus sufficiently interactive to create minimum contacts.  *See Neogen*, 282 F.3d at 890 ("intentional interaction with the residents of a forum state … is evidence of a conscious choice to transact business with inhabitants of a forum state").

Though Defendants argue to the contrary, their citation to *Bird v. Parsons* contradicts their point.  Mot. at 7.  There, the court "conclude[d] that by maintaining a website on which Ohio

9

residents can register domain names and by allegedly accepting the business of [] Ohio residents, the Dotster defendants have satisfied the purposeful-availment requirement." *Bird*, 289 F.3d at 874. Spreadshirt's website is far more interactive and reveals significantly more outreach to Ohio residents than even the website in *Bird*.

**Revenue**. Defendants also derive significant revenue from products they sell in Ohio. *See Bird*, 289 F.3d at 867 ("courts may exercise personal jurisdiction over a defendant…[who] *derives substantial revenue* from goods used or consumed or services rendered in this state.") (emphasis added). In 2024, according to publicly available information, Spreadshirt reported $34.3 million in sales within the United States. *See* Ex. D at 1-2. If sales in Ohio are proportional to the nationwide amount, Spreadshirt would have sold approximately $686,000 worth of products in Ohio last year alone, easily satisfying minimum contacts. *See Bird*, 289 F.3d at 872 (finding specific jurisdiction properly pled where plaintiff divided defendant's overall sales figures by each state to "estimate the number of sales that have occurred in Ohio").

Notably, Defendants' minimum contacts analysis does not address revenue. *See* Mot. at 6-8. They have thus forfeited any related arguments. *U.S. v. Wahib*, 636 F. Supp. 3d 816, 835 (N.D. Ohio 2022) ("It is well established that a party forfeits arguments made for the first time in reply."). Nor have Defendants provided the amount of revenue they derive from Ohio. Instead, the best Defendants could do is state that the "total revenue for the Ohio Order was $93.97." Dkt. 12-2 at ¶ 10; *see also* Mot. at 11. But Defendants may not "defeat[] personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff." *Malone*, 965 F.3d at 506 (finding reversible error where district court "credited [defendant's] affidavit"). Even if they could, the "$93.97" amount is a red herring because "the proper test for personal jurisdiction is… whether the absolute amount of business conducted [in the forum] represents something more than

'random, fortuitous, or attenuated contacts' with the state." *AMB Media*, 2024 WL 2052151 at *5 (finding "Defendants' roughly twenty sales per year" sufficient for purposeful availment). Defendants' yearly sales of over $600,000 in Ohio establish minimum contacts. *See Bird*, 289 F.3d at 872.

In any event, the $93.97 allegation is likely understated. Defendants claim that after the Complaint was filed on May 22, 2025, "Spreadshirt immediately removed the alleged offending images and researched the problem." Mot. at 3. But numerous BBC counterfeit products continued to appear on Spreadshirt's website in June, which confirms that Defendants' representation is narrowly worded to exclude *other* infringing products. *See* Ex. E. In a June 24, 2025, email and then during a July 1, 2025, telephone conference, Defendants' counsel represented that Plaintiff's marks had been removed. But once again, BBC counterfeit products were *still* on Defendants' website later that same day:



(*Ex. E at 10*)

11

These holes in Defendants' investigation and their repeated inability to protect BBC marks means the Court should give no weight to any of Defendants' assertions regarding the "total products potentially related to the BBC trademarks" or their claim of total revenues from their illegal sales of infringing counterfeits.  Mot. at 4.

In sum, whether through Defendants' resident employee, regular shipping, various interactive website features, or revenue (and certainly all four combined), BBC has met its relatively slight burden of demonstrating Defendants' minimum contacts with Ohio.  *See AMB Media*, 2024 WL 2052151 at *4 (holding that "if a company holds itself out to a jurisdiction's business and does regular commerce there, it has fair warning that it could be subject to suit in that location").

### C.   Defendants' Shipment of BBC's Counterfeit Products Relates to Their Ohio Contacts Because They Systematically Serve the State.

Defendants' shipment of the Infringing Products is "related" to their contacts with Ohio, satisfying the second prong of the *Mohasco* standard.  Relatedness is a "lenient standard, requiring only that the cause of action have a substantial connection to the defendant's activity in the state." *Sullivan*, 79 F.4th at 672.  A "substantial connection" includes claims where "the operative facts are at least marginally related to the alleged contacts."  *Bird*, 289 F.3d at 875.  To determine relatedness, the Court assesses "whether there is an affiliation between the forum and the underlying controversy, without demanding that the inquiry focus on cause." *Ford*, 592 U.S. at 362; *Sullivan*, 79 F.4th at 672 ("The Sixth Circuit, even before *Ford*, explained that the cause of action need not formally arise from defendant's contacts.").  Thus, when "looking for the requisite connection between the claims and the defendant's contacts under the second prong, our caselaw does not require that courts examine *why* that connection exists, so long as it sufficiently exists." *Sullivan*, 79 F.4th at 673.  BBC easily meets this lenient standard.

12

*First*, Defendants' shipment of the Infringing Products is of a kind with its regular business of shipping products into Ohio, as described in detail above. *See supra*, Section I.B.  By "systematically serv[ing] a market in" Ohio, "there is a strong relationship among the defendant, the forum, and the litigation."  *Ford*, 592 U.S. at 352–53 (finding relatedness requirement met); *see also Neogen*, 282 F.3d at 892 (finding relatedness requirement met where defendant's regular sales into the state were a "continuous and systematic part of its business").

*Second*, the harm suffered by BBC in Ohio from the marketing and sale of the Infringing Products is related to Defendants' contacts with Ohio.  *Bird*, 289 F.3d at 875 (finding "lenient standard" of relatedness met where "[b]oth the Dotster defendants' contacts with Ohio and Bird's claim of copyright and trademark violations stem from these defendants' operation of the Dotster website"); *Neogen*, 282 F.3d at 892 (finding it "possible that NGS's activities in Michigan have caused economic injury to Neogen" and "[s]uch a causal connection satisfies the 'arising from' requirement"); *AMB Media*, 2024 WL 2052151 at *7 ("Because AMB's claims allege trademark-based harm caused by Defendants' sales of products, they clearly arise out of and relate to Defendants' conduct of selling those same products to Tennessee residents.").

Defendants address the relatedness prong in little more than one page with only two perfunctory arguments.  *See* Mot. at 9-10.  (Again, Defendants have thus forfeited any other relatedness arguments.  *Wahib*, 636 F. Supp. 3d at 835.)  Each of Defendants' relatedness arguments is meritless.  As to shipping, Defendants argue—without citing a single case—that the "mere fact that one sale out of a total of 81 allegedly infringing sales was sold to a New York company and shipped to an Ohio address is not sufficient to conclude that the operative facts of this controversy arose from Spreadshirt's contacts with Ohio."  Mot. at 10.  Once again, the Supreme Court rejected this exact argument in *Ford* because whether jurisdiction is proper in *other*

states (as Defendants suggest) has no impact on whether jurisdiction is proper in *this* state. 592

U.S. at 362 ("So the case is not over even if, as Ford argues, a causal test would put jurisdiction in

only the States of first sale, manufacture, and design.").

Defendants also argue—again without citing authority—that the relatedness prong is not

met because the sale and manufacture of the infringing trademark occurred outside Ohio. *See* Mot.

at 9-10. This argument should be rejected, as "[t]he Due Process Clause does not limit specific

jurisdiction over a defendant to the states only where a product was designed, manufactured, or

first sold." *Sullivan*, 79 F.4th at 672; *see also Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The

proper question is not where the plaintiff experienced a particular injury or effect but whether the

defendant's conduct connects him to the forum in a meaningful way."). Here, Defendants' conduct

connects them to Ohio because they shipped the Infringing Products into Ohio. BBC has met the

lenient relatedness standard. *Bird*, 289 F.3d at 875.[6]

**D. Defendants' Repeated Contacts With Ohio Make Personal Jurisdiction Reasonable.**

The third *Mohasco* prong looks to the reasonableness of exercising personal jurisdiction

over a defendant based on the defendant's contacts with the forum. At the outset, an "inference

arises that the third factor is satisfied if the first two requirements are met," *Bird*, 289 F.3d at 875,

and "only the unusual case will not meet this third criteria," *Air Prods. & Controls, Inc. v. Safetech

Int'l, Inc.*, 503 F.3d 544, 554 (6th Cir. 2007). Based on the foregoing, BBC is entitled to this

presumption. Even without such a presumption, however, the third prong is satisfied because

---

[6] Defendants' arguments are undermined by practical considerations. Under their theory, an infringer could exploit a
state's markets but avoid the jurisdiction of the state's (or the United States') courts by doing the dirty work in a
foreign jurisdiction, and then directing the infringing-but-completed products to the jurisdiction. *See In re E.
Palestine*, 2024 WL 1096062, at *7 ("Crafting an e-commerce exception to that standard would permit web-based
companies to reap the benefits of a nationwide market while foreclosing customers' ability to seek redress where
injured.").

where, as here, Defendants availed themselves "of the privilege of conducting business in the forum state and [their] activities are shielded by the benefits and protections of the forum's laws[,] it is presumptively not unreasonable to require [them] to submit to the burdens of litigation in that forum as well." *Sullivan*, 79 F.4th at 674.

This is not the unusual case that would overturn the well-established presumption of reasonableness. Although Defendants "might face a burden in having to defend a lawsuit in Ohio, they cannot reasonably object to this burden given" the numerous contacts with Ohio described above. *Bird*, 289 F.3d at 875. Moreover, "longstanding precedent establishes that a company's choice to welcome customers from and regularly sell products into a state subjects the company to that state's jurisdiction" and thus satisfies the reasonableness inquiry. *In re E. Palestine*, 2024 WL 1096062 at *7; *see also Illinois v. Hemi Grp., LLC*, 622 F.3d 754, 760 (7th Cir. 2010) ("Hemi wants to have its cake and eat it, too: it wants the benefit of a nationwide business model with none of the exposure. There is nothing constitutionally unfair about allowing Illinois, a state with which Hemi has had sufficient minimum contacts, to exercise personal jurisdiction over Hemi.").

Defendants' citation to *Zoya* in support of their argument that jurisdiction is unreasonable "based on the singular internet sale for a trademark infringement claim" is inapposite. Mot. at 10 (quoting *Zoya Co. v. NIOS, Inc.*, 2013 WL 4511922, at *4 (N.D. Ohio Aug. 23, 2013)). In *Zoya*, "approximately 99%" of the products at issue were "sold in brick-and-mortar stores, and less than 1% [were] sold online." 2013 WL 4511922 at *1. Here, Defendants run an online business, and nearly all of their sales come from online purchases.[7] Moreover, the *Zoya* reasonableness inquiry was tied to "one singular internet sale" *without* any other constitutionally significant connections

---

[7] In *Neogen*, only 10 percent of products were sold online, yet the Sixth Circuit reversed the district court and permitted jurisdiction. 282 F.3d at 886. Here, Defendants' online sales make up their *entire* business model.

to the state. *Id.* at *4. Here, the reasonableness inquiry is tied to the Infringing Products *and* the numerous contacts described above. That is why courts honor a presumption of reasonableness with "only the unusual case" being exempted. *Bird*, 289 F.3d at 875.

As the Sixth Circuit summarized, "a company doing repeated business in given fora enters those jurisdictions through the front door," and there "is no internet-specific reason why, when faced with the process server, it should be allowed to escape out the back." *AMB Media*, 2024 WL 2052151 at *7 (quoting *Ford*, 592 U.S. at 384 (Gorsuch, J., concurring)).

## II. The Parent Company Defendants Should Not Be Dismissed Because They Control Spreadshirt, Inc.

Jurisdiction is proper over the foreign Defendants sprd.net AG and Spreadshirt Print on Demand GmbH in Ohio because they act through Spreadshirt Inc. as an alter-ego. "This circuit has adopted the alter-ego theory of personal jurisdiction, which provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Carrier*, 673 F.3d at 450–51. A court can trace an alter-ego relationship back to foreign defendants through pleadings and supporting affidavits, and the court must draw inferences in the plaintiff's favor. *See id.* at 451. Courts look to a variety of factors to establish an alter ego, including whether the entities engage in the same business enterprise, and whether they share employees, corporate officers, and assets. *Id.* at 445-56 (permitting alter ego jurisdiction where parent engaged in global sales "directly and/or through its affiliates" and "more importantly" that "entities were operated and deliberately portrayed to the outside world as a single global enterprise" with overlapping executives and personnel).

Here, Defendants actively promote the three entities as one unit by describing themselves as family of brands under one "umbrella," Ex. F at 10, that shares "production sites in Europe and

the USA," *id.* at 4. Defendants share corporate and board leadership. *See id.* at 6, 15-16. They also state their "[m]ore than 1,000 employees," *id.* at 9, report to one "reliable employer," *id.* at 4. Defendants also send customers to various other websites they control based on the purchaser's region. *Id.* at 16. Drawing all inferences in BBC's favor, these "allegations facially support the application of [the alter-ego] theory with respect to" the foreign Defendants, and they should not be dismissed from this action. *Carrier*, 673 F.3d at 451.

### III. The Court Should Deny the Transfer Motion Because the Other Districts Do Not "Make More Sense" Than the Northern District of Ohio.

Defendants alternatively seek transfer to the Eastern District of Pennsylvania, the District of Delaware, or the Southern District of New York. Mot. at 16-19. Their arguments for transfer should be disregarded. As the Sixth Circuit has long held, "a plaintiff enjoys a 'venue privilege' to file his action in whichever proper venue he prefers." *Tobien*, 133 F.4th at 619 n.2. In light of that privilege, Defendants carry a heavy burden on their transfer motion such that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.*; *see also, e.g.*, *W. Am. Ins. Co. v. Potts*, 1990 WL 104034, at *2 (6th Cir. 1990) ("Foremost consideration must be given to the plaintiff's choice of forum."). Defendants admit, and BBC agrees, that the sole issue for transfer purposes is whether transfer from this district "is justified for 'the convenience of parties and witnesses' and 'in the interest of justice.'" Mot. at 17 (quoting *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002)).[8] Put in

---

[8] Defendants misleadingly cite *Jamhour* for the proposition that "'transfers pursuant to Section 1404(a) may be granted 'upon a lesser showing of inconvenience.'" Mot. at 17 (citing 211 F. Supp. 2d at 945). But *Jamhour* used the "lesser showing" phrase in comparison to the higher burden required in determining a *forum non conveniens* motion. *See* 211 F. Supp. 2d at 945. There is no such motion here, so the "lesser showing" language is of no consequence.

Defendants' words, the sole transfer issue is whether these alternative "jurisdictions make more sense for the resolution of this matter." Mot. at 16.  They do not.

**A.      The Eastern District of Pennsylvania Has No Connection to This Case and is Further From Defendants' Headquarters Than This District.**

Transfer to the Eastern District of Pennsylvania would serve neither the convenience of the parties nor the interest of justice.  Defendants admit they are headquartered in Pennsylvania.  Mot. at 18.  Although Defendants publicly list an office in Pittsburgh, Pennsylvania, *see* Ex. F. at 1, they have registered an address in Greensburg, Pennsylvania, as their headquarters with the Commonwealth of Pennsylvania, *see* Ex. H.  Either way, both Pittsburgh and Greensburg are in the Western District of Pennsylvania.  To the extent Defendants' documents or employees are located in either of those cities and require physical transportation, those headquarters are closer to this Court and its courthouse than to any courthouse in the Eastern District of Pennsylvania.  Additionally, no aspect of this case is controlled by Pennsylvania law.  Defendants have not met their burden to show that transfer is justified for either convenience or in the interest of justice.

**B.      The District of Delaware Has No Connection to This Case and Has a Busier Docket.**

Defendants have identified nothing about the District of Delaware that would make litigating there any more convenient to the parties.  Mot. at 17.  Defendants do not suggest any evidence exists in Delaware, nor that any witnesses reside there.  "More importantly, the interest of justice strongly disfavors transfer.  The interest of justice and principals of judicial efficiency when considering transfer are often commanded by which court is the busiest." *Ardent Techs. Inc. v. Advent Servs LLC*, 2023 WL 5588547, at *9 (S.D. Ohio Aug. 29, 2023).  The weighted number of filings per authorized judgeship in the District of Delaware far exceeds that of the Northern District of Ohio.  *See* Ex. G (Federal Judicial Caseload Statistics, Mar. 31, 2025).  Again,

Defendants have not met their burden to show transfer is justified for either convenience or in the interest of justice.

**C.**    **The Southern District of New York Has No Connection to This Case and Has a Busier Docket.**

As above, Defendants again fail to show why the Southern District of New York would be more convenient than any other district to which they ship products. Mot. at 17. Defendants were responsible for the design, advertisement, production, and distribution of the Infringing Products. Nothing necessary to prove or disprove Defendants' liability exists in New York. And as with the District of Delaware, the Southern District of New York sees far more weighted filings per authorized judgeship than the Northern District of Ohio. *See* Ex. G. Like Pennsylvania and Delaware, New York law has no bearing on this case.

To the extent Defendants argue the Southern District of New York makes more sense because "BBC operates out of New York," Mot. at 18, that fails because "the moving party must show that witnesses (usually third-party witnesses rather than employees of the defendants) are unwilling to attend a trial in that forum," *Abercrombie & Fitch Co. v. Ace Eur. Grp., Ltd.*, 2012 WL 2995171, at *8 (S.D. Ohio July 23, 2012) (citing cases). Defendants have made no such showing. And to the extent Defendants argue the Southern District of New York makes more sense because of the location of discoverable documents, that likewise fails because "the location of documentary evidence is a minor consideration. Documents may easily be sent by mail, copied or even faxed to a remote location." *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 574 (N.D. Ohio 1998). Defendants have not met their heavy burden to show transfer is justified.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendants' motion to dismiss and decline to transfer this action.

Dated: August 11, 2025　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　By:　　　*/s/ Matthew Schwartz*

　　　　　　　　　　　　　　　　　　Matthew L. Schwartz (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　*mlschwartz@bsfllp.com*
　　　　　　　　　　　　　　　　　　Andrew Villacastin (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　*avillacastin@bsfllp.com*
　　　　　　　　　　　　　　　　　　Boies Schiller Flexner LLP
　　　　　　　　　　　　　　　　　　55 Hudson Yards
　　　　　　　　　　　　　　　　　　New York, NY 10001
　　　　　　　　　　　　　　　　　　Tel: 212-446-2399

　　　　　　　　　　　　　　　　　　Richard J. Pocker (0026165)
　　　　　　　　　　　　　　　　　　*rpocker@bsfllp.com*
　　　　　　　　　　　　　　　　　　Boies Schiller Flexner LLP
　　　　　　　　　　　　　　　　　　300 South Fourth Street Suite 800
　　　　　　　　　　　　　　　　　　Las Vegas, NV 89101
　　　　　　　　　　　　　　　　　　Tel: 702-382-7300

　　　　　　　　　　　　　　　　　　Katie Kavanaugh (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　*kkavanaugh@bsfllp.com*
　　　　　　　　　　　　　　　　　　Boies Schiller Flexner LLP
　　　　　　　　　　　　　　　　　　2029 Century Park East, 1520
　　　　　　　　　　　　　　　　　　Los Angeles, CA 90067
　　　　　　　　　　　　　　　　　　Tel: 213-995-5718

　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*