UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BBC ICE CREAM, LLC, | ) | CASE NO. 1:25-cv-01055 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| SPREADSHIRT, INC., *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Before the Court is the Motion to Dismiss or Transfer submitted by Defendants

Spreadshirt, Inc. ("Spreadshirt"), sprd.net AG, and Spreadshirt Print on Demand GMBH

("Spreadshirt Print on Demand") (collectively "Defendants").[1]  (Doc. 12.)  Plaintiff BBC Ice

Cream, LLC ("BBC") opposed.  (Doc. 15.)  Defendants replied.  (Doc. 16.)  For the reasons

below, the Motion to Dismiss or Transfer is GRANTED in part and DENIED in part.

I.      BACKGROUND

A.      Factual Allegations

BBC is a fashion label and retailer.  (Doc. 1 at 1, ¶ 1.)[2]  BBC is registered in Delaware

and its primary place of business is in New York.  (*Id.* at 8, ¶ 12.)  Relevant here, BBC sells two

clothing lines, Billionaire Boys Club and ICECREAM.  (*Id.*)  It owns several registered and

---

[1] For ease of reference, the Defendant entities will be referred to individually as "Spreadshirt,"
"Spreadshirt Print on Demand," and "sprd.net AG," and collectively as "Defendants."
Spreadshirt Print on Demand and sprd.net AG will be referred to collectively as the "German
Entities."

[2] For ease and consistency, record citations are to the electronically stamped CM/ECF document
and PageID# rather than any internal pagination.

active trademarks relating to designs it uses for its fashion labels (the "BBC Trademarks").[3]  (*Id.* at 11-12, ¶ 23.)  BBC has two flagship stores, one in New York City and the other in Miami, and a brick-and-mortar store in Hong Kong.  (*Id.* at 9, ¶ 20.)  It also sells merchandise through other authorized retailers in the U.S. and internationally.  (*Id.* at 9-10, ¶¶ 20-21.)

Founded in 2002, Spreadshirt is a Delaware corporation with a principal place of business in Pennsylvania.  (*Id.* at 8, ¶ 14.)  Spreadshirt Print on Demand is a German limited liability company and the sister company of Spreadshirt.  (*Id.* at ¶ 15.)  sprd.net AG is a German corporation and the parent company of the Spreadshirt entities.  (*Id.* at ¶ 13.)  Part of Spreadshirt's business involves partnering with merchants who use Spreadshirt's online tools to create and design products and apparel.  (*Id.* at 15, ¶¶ 36, 38-39.)  Spreadshirt then acts as an online platform where merchants can sell those products and apparel to customers.  (*Id.*)  Unlike traditional marketplaces where products and apparel are created and stockpiled for sale to consumers, Spreadshirt offers a print on demand ("POD") service.  (*Id.* at ¶ 34.)  POD services allow merchants to create and design products and apparel which Spreadshirt only produces once a consumer purchases a product.  (*Id.* at 13, ¶ 29.)  In essence, Spreadshirt operates an online marketplace where merchants can upload designs for products and apparel to sell to consumers. Once a consumer purchases a product, Spreadshirt creates the product and distributes it to the purchaser.  Spreadshirt offers shipping throughout the United States, including Ohio.  (*Id.* at 18, ¶ 43.)

Advancements in printing technology and online purchasing capabilities have transformed the POD industry, sometimes resulting in market exploitation.  (*Id.* at 14, ¶ 30.)

---

[3] The BBC Trademarks include Registration Nos. 3,496,296; 5,086,483; 5,936,941; 5,953,777; 4,813,058; 5,723,816; 3,216,201; 5,242,580; 4,846,345; and 6,493,579.

Because merchants can upload and create products and apparel on demand, POD marketplaces can be rife with copyright and trademark infringements.  (*Id.* at ¶ 31.)

In this case, BBC alleges Defendants work with "serial counterfeiters" and are "directly involved with and actively contribute to the proliferation of infringing and counterfeit goods." (*Id.* at 15, ¶ 37.)  BBC claims Defendants "unlawfully manufacture, advertise, market, and sell unauthorized and illegal products," including products which violate the BBC Trademarks.  (*Id.* at ¶ 38.)  That is, counterfeiters upload trademark infringing designs that Defendants manufacture and sell to consumers.  (*Id.* at 15-16, ¶ 39.)  Defendants also maintain an "Image Database" for storing merchant designs.  (*Id.* at 2-3, ¶ 6.)  These designs can be used by creators to manufacture merchandise.  (*Id.* at 19, ¶ 46.)  The original creator of the image in the database receives a percentage of any sales.  (*Id.* at 2-3, 20, ¶¶ 6, 49.)  BBC alleges Defendants' Image Database contains numerous infringing designs owned by BBC.  (*Id.* at 19-20, ¶ 48.)  According to BBC, Defendants do not maintain proper procedures for identifying infringing designs used by merchants and stored in the Image Database.  (*Id.* at 21, ¶ 50.)

BBC has identified numerous counterfeit and infringing products available for purchase from Defendants.  (*Id.* at 16-18, ¶ 40.)  BBC confirmed Spreadshirt sells counterfeit products. (*Id.* at 18, ¶ 44.)  BBC identified one purchase of counterfeit products on May 20, 2025.  (*Id.*) This purchase was sent to an Ohio address.  (*Id.*)

Spreadshirt investigated the purchase.  (Doc. 12-1 at 111.)  According to its investigation, an entity in New York City called "Desiree De Lo Santos Company" purchased three products containing the BBC Trademarks.  (Doc. 12-2 at 129, ¶ 12.)  Desiree De Los Santos works at Red Points, a brand protection company.  (*Id.* at 129-30, ¶ 12.)  Though the Desiree De Los Santos Company is in New York City, the purchase directed the shipment to the "Joan Porta Company"

in North Ridgeville, Ohio.  (Doc. 12-5 at 139.)  Joan Porta also works at Red Point.  (Doc. 12-2 at 130.)  Further investigation showed eight individuals had Spreadshirt accounts offering BBC products.  (Doc. 12-6 at 140-43.)  These individuals reside in Georgia, New York, Canada, Indonesia, or Vietnam.  (*Id.*)

### B. Procedural History

On May 22, 2025, BBC filed its Complaint.  (Doc. 1.)  The Complaint asserts four claims: (1) trademark infringement under 15 U.S.C. § 1114 (Count One); (2) trademark dilution under 15 U.S.C. § 1125(c) (Count Two); (3) false designation of origin under 15 U.S.C. § 1125(a) (Count Three); and (4) common law unfair competition under Ohio law (Count Four).  (*Id.* at 26-31, ¶¶ 60-89.)  BBC seeks an injunction enjoining Defendants from using the BBC Trademarks in any way, an order requesting the destruction of all BBC materials, an order or accounting for all profits relating to the BBC Trademarks, and an order of statutory damages pursuant to 15 U.S.C. § 1117(c).  (*Id.* at 31-33.)

On July 11, 2025, Defendants moved to dismiss the suit for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.  (Doc. 12.)  Alternatively, Defendants argued the case should be transferred.  (*Id.*)  Lastly, the German Entities argued, at the very least, they should be dismissed because BBC has not pleaded sufficient facts nor appropriately argued the Court has personal jurisdiction over the foreign entities.  (Doc. 16.)  BBC opposed the motion to dismiss and motion to transfer.  (Doc. 15.)  Defendants replied.  (Doc. 16.)

II.     ANALYSIS

A.      **Legal Standard**

Defendants seek dismissal for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2). As the party seeking to assert personal jurisdiction, BBC bears the burden of establishing such jurisdiction exits.  *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887-88 (6th Cir. 2002)).  A plaintiff can make such a prima facie showing through its complaint.  *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023) (citing *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 437 (6th Cir. 2022)). Once done, the burden shifts to the defendant whose "motion to dismiss must be supported by evidence."  *Id.*  "The burden then returns 'to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'"  *Id.* (quoting *Peters Broad. Eng'g*, 40 F.4th at 437-38).

From there, the Court may: "decide the motion upon the affidavits alone"; "permit discovery in aid of deciding the motion"; or "conduct an evidentiary hearing to resolve any apparent factual questions."  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Having reviewed the parties' submissions, the Court finds it can resolve the personal jurisdiction question on the submissions alone.  Where, as here, the Court resolves the matter on the submissions, "the plaintiff 'need only make a prima facie showing of jurisdiction.'"  *Neogen*, 282 F.3d at 887 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). This burden is "relatively slight."  *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)).  The Court must view "the pleadings and affidavits in a light most favorable to the

plaintiff and not weigh the controverting assertions of the party seeking dismissal." *Sullivan*, 79 F.4th at 660 (quoting *Peters Broad. Eng'g*, 40 F.4th at 438).

### B.   Personal Jurisdiction

"Personal jurisdiction can be general or specific." *Id.* "General jurisdiction exists when the defendant's affiliations with the forum state are 'so continuous and systematic as to render the defendant essentially at home' there." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)). BBC concedes the Court does not have general jurisdiction over Defendants.

"Specific jurisdiction 'depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Sullivan*, 79 F.4th at 660 (quoting *Malone*, 965 F.3d at 502). "Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bird*, 289 F.3d at 871 (*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)).

### 1.   Ohio's Long-Arm Statute

As a threshold issue, the parties dispute whether Ohio's long-arm statute is conterminous with the limits of due process or whether Ohio's long-arm statute is more restrictive. (Doc. 12-1 at 120; Doc. 15 at 173-74.) Spreadshirt argues Ohio's long-arm statute is more restrictive. (Doc. 12-1 at 120.) BBC argues it is not. (Doc. 15 at 173-74.) If it is conterminous, the Court need only address constitutional due process. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549

(6th Cir. 2016) (where long-arm statute "extends to the limits imposed by federal constitutional due process requirements[], the two questions become one").  If it is more restrictive, the Court must assess whether BBC alleges facts sufficient to establish jurisdiction under Ohio's long-arm statute.  *Sullivan*, 79 F.4th at 664 (requiring "separate analysis" from the Due Process Clause if long-arm statute does not extend to the limits imposed by federal constitutional requirements).

Prior to 2021, there was no dispute Ohio's long-arm statute required a separate analysis. *See Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012) ("Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law."). Since the Ohio legislature amended the long-arm statute in 2021, courts in this Circuit have debated whether the amendment extended the long-arm statute to the limits of due process, and courts have come to differing conclusions.  *Compare Angel's Dream, LLC v. Toledo Jet Ctr., LLC*, 721 F. Supp. 3d 601, 610 (N.D. Ohio 2024) (finding amendment extended Ohio's long-arm statute to the extent of due process), *with Carbone v. Kaal*, 744 F. Supp. 3d 835, 838 (S.D. Ohio 2024) (finding amendment did not collapse Ohio's long-arm statute with the due process analysis).

The Court need not address the issue here because one of Ohio's long-arm statute's provisions plainly applies.[4]  A court may exercise personal jurisdiction over a defendant whose actions cause "tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state."

---

[4] BBC's brief in opposition did not address Ohio's long-arm statute.  However, because a court may consider jurisdictional issues *sua sponte*, the Court conducts the proper analysis under Ohio's long-arm statute based on the facts presented in the parties' briefing.

R.C. § 2307.382(A)(4).  Section 2307.382(A)(4) requires that two elements be established: "(1) an act or omission outside the state caused tortious injury in Ohio, and (2) the defendant regularly conducted activity in Ohio."  *Bird*, 289 F.3d at 876 (quoting *Estate of Poole v. Grosser*, 731 N.E.2d 226, 229 (Ohio 1999)).

As to the first element, the Sixth Circuit has long held violations of trademark law are analogous to tort cases.  *Id.* (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998)).  The Sixth Circuit also recognizes trademark infringement injuries "occur[] both in places where the plaintiff does business and in the state where its primary office is located."  *Id.* As alleged here, BBC's alleged trademark injury would be felt in New York, where its primary office is located, and in Ohio, where the trademark infringement ultimately was directed.  As to the second element, Spreadshirt does not dispute it regularly conducts business in Ohio.  (Doc. 16 at 260.)  Therefore, both elements are met, and Ohio's long-arm statute authorizes personal jurisdiction over Spreadshirt.  *Bird*, 289 F.3d at 876 (finding Ohio's long-arm statute applied where trademark harm occurred in part in Ohio).

### 2.     Constitutional Due Process

The Court's due process analysis focuses on whether the defendant had "certain minimum contacts" with Ohio "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)).  "Minimum contacts exist where a 'defendant's conduct and connection with the forum state are such that he would reasonably anticipate being haled into court there.'" *Citizens Bank v. Parnes*, 376 F. App'x 496, 502 (6th Cir. 2010) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).

Specific jurisdiction depends on "the relationship among the defendant, the forum, and the litigation."  *Walden v. Fiore*, 571 U.S. 277, 284, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) (quotations and citations omitted).  Courts conduct a three-part analysis to determine whether specific personal jurisdiction comports with due process.  *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).  "First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state."  *Sullivan*, 79 F.4th at 670 (emphasis in original) (quoting *AlixPartners*, 836 F.3d at 549).  "Second, the claims 'must arise out of or relate to the defendant's contacts with the forum.'"  *Id.* (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359, 141 S. Ct. 1017, 209 L. E. 2d 225 (2021)).  "Third, 'the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'"  *Id.* (quoting *AlixPartners*, 836 F.3d at 549-50); *see also Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012).

Each is addressed below.

### a.      Purposeful Availment

A defendant purposefully avails itself of a forum when it "act[s] or cause[s] a consequence" in the forum such that it "invoke[s] the benefits and protections" of that forum's law.  *MAG IAS Holdings*, 854 F.3d at 900 (citations omitted).  The requirement of purposeful availment is "more aspirational than self-defining," but years of judicial decisions have uncovered four principles that guide the Court's analysis.  *Power Invs., LLC v. SL EC, LLC*, 927 F.3d 914, 917-18 (6th Cir. 2019) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)).

First, the defendants' forum contacts must be intentional. Purposeful availment requires the defendant to have "deliberately reached out beyond its home" into the forum state. *Ford*, 592 U.S. at 359 (quotations and citations omitted). Contacts that are no more than "random, fortuitous, or attenuated" are not enough. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quotations and citations omitted).

Second, the defendant's forum contacts must be of sufficient significance. The defendant must have "created a 'substantial connection' with the forum state by engaging in 'significant activities within [the] State,' or by creating 'continuing obligations' to residents in that state." *MAG IAS Holdings*, 854 F.3d at 900 (quoting *Burger King*, 471 U.S. at 475-76). Substantiality does not require any specific type of contact. For example, forum contacts can be substantial even when the defendant is not physically present in the forum, though physical presence is relevant to the analysis. *Id.* (citing *Burger King*, 471 U.S. at 476, and *Walden*, 571 U.S. at 285). Instead, whether forum contacts are sufficiently substantial depends on the "quality of the contacts, and not their number or status." *CompuServe*, 89 F.3d at 1265 (quotations and citations omitted). That said, "[a] single deal with an in-forum resident [] does not by itself suffice." *Power Invs.*, 927 F.3d at 918 (citing *Burger King*, 471 U.S. at 478); *see also Neogen*, 282 F.3d at 891 (explaining that a "one-time, unlikely-to-be-repeated" deal did not create personal jurisdiction).

Third, purposeful availment depends on the "contacts that the 'defendant [it]self' creates with the forum State." *Walden*, 571 U.S. at 284 (quoting *Burger King*, 471 U.S. at 475). Because personal jurisdiction focuses on the defendant, contacts between a plaintiff or a third party and the forum state cannot establish minimum contacts. *Id.*

Fourth, and relatedly, purposeful availment "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285.  While the "defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties," the Supreme Court has explained that the "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286.

Spreadshirt argues it did not purposefully avail itself of Ohio's jurisdiction.  (Doc. 12-1 at 114.)  To Spreadshirt, its connection to Ohio is too attenuated.  (*Id.* at 115.)  The allegedly infringing designs were uploaded to Spreadshirt's website outside of Ohio.  (*Id.*)  The printing of the products occurred outside of Ohio.  (*Id.*)  The products were purchased by someone in New York.  (*Id.*)  The only connection to Ohio is the *purchaser's* request the materials be shipped to an Ohio address.  (*Id.*)  Further, Spreadshirt argues the maintenance of its website, standing alone, is insufficient.  (*Id.*)  Spreadshirt admits Ohio residents could use its website, but under the facts of this case no such purposeful availment occurred.  (*Id.*)  A trademark plaintiff is harmed in the state in which it does business or where the purchase occurred.  Here, that is either New York or Delaware, not Ohio.  (Doc. 16 at 261.)

BBC argues Spreadshirt's minimum contacts with Ohio "easily" satisfy the requirements for specific jurisdiction.  (Doc. 15 at 174.)  BBC first notes Spreadshirt employs at least one person who works from their home in Ohio.  (*Id.* at 175.)  To BBC, this alone is sufficient for specific jurisdiction.  (*Id.*)  BBC also cites to Spreadshirt's business of shipping products to and making substantial sales within Ohio.  (*Id.*)  In fact, Spreadshirt maintains a website where it promotes shipping to the "48 contiguous states."  (*Id.* at 175-76.)  This means Spreadshirt has deliberately reached beyond its home state to market in the forum state.  (*Id.*)  And BBC argues

Spreadshirt operates an interactive website with sufficient minimum contacts to Ohio, with several Ohio shops using Spreadshirt to sell products in Ohio.  (*Id.* at 178.)

A website operator "purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state."  *Neogen*, 282 F.3d at 887 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).  Thus, courts applying *Zippo* place websites on a "sliding scale" from passive to interactive.  *Id.* (quoting *Zippo*, 952 F. Supp. at 1124).  The more interactive a website, the more likely it is that personal jurisdiction is proper.  *Id.*; *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 678 (6th Cir. 2005) ("Interactive websites can subject the defendant to specific personal jurisdiction, whereas passive websites are less likely to confer such jurisdiction.").  A passive website is one "where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions."  *Zippo*, 952 F. Supp. at 1124.  At the other end of the spectrum are websites "where a defendant clearly does business over the Internet."  *Id.*  And in the middle are websites "where a user can exchange information with the host computer."  *Id.*

Spreadshirt operates a highly interactive website.  Individuals in Ohio can order products from Spreadshirt with delivery in Ohio.  Merchants in Ohio can actively use the platform to operate their own e-commerce stores.  BBC has submitted evidence Ohio residents have done just that. (Doc. 15-4.)  In this way, Spreadshirt "deliberately reached out beyond its home" state into the forum state.  *Ford*, 592 U.S. at 359.  Spreadshirt's website is sufficiently interactive such that it has purposely availed itself in Ohio.  *Bird*, 289 F.3d at 874-75 (finding purposeful availment satisfied where website allowed Ohio residents to register domain names).  And these contacts were not insignificant.  Spreadshirt acknowledges it does business in Ohio.  (Doc. 16 at

260.) Because the "[u]se of an interactive website to sell products into a forum creates jurisdiction not because of any internet-specific rules, but because that course of conduct pairs a willingness to sell into the forum with regular sales—features that have long constituted purposeful availment," *AMB Media, LLC v. OneMB, LLC*, No. 23-5607, 2024 WL 2052151, 2024 U.S. App. LEXIS 11277, at \*10 (6th Cir. May 8, 2024), purposeful availment has been established.

### b. Arise Out of or Relate To

Due process also requires that a claim "must arise out of or relate to the defendant's contacts with the forum." *Ford*, 592 U.S. at 359 (internal quotations and citation omitted). This standard does not necessarily require a causal connection between the defendant's contacts and plaintiff's claims. While "[t]he first half of that standard asks about causation[,] the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id.* at 362. Of course, the "relate to" inquiry "does not mean anything goes." *Id.* There are "real limits" that "protect defendants foreign to a forum." *Id.* In practice, "relate to" means that the defendant's forum contacts are of the same type that gave rise to the plaintiff's claims, even if the actions that created those claims occurred outside the forum. Put another way, if "the causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts," this prong is met. *Air Prods.*, 503 F.3d at 553 (citations omitted).

Spreadshirt operates a website where merchants can design products and sell them to consumers. Spreadshirt has active merchants in Ohio and ships products to Ohio regularly. BBC's claims allege Spreadshirt violated trademarks by manufacturing and shipping infringing products into Ohio. Given the "lenient" standard, BBC's claims at least "marginally relate" to Spreadshirt's contacts with the forum. *Bird*, 289 F.3d at 875; *see also AMB Media*, 2024 WL

2052151, 2024 U.S. App. LEXIS 11277, at *14 (holding plaintiff's claim alleging trademark-based harms caused by the sales of products "clearly" arises out of and relates to defendants' conduct of selling those same products to in-forum residents).  That is, BBC's causes of action for trademark infringement were "made possible by" Spreadshirt's contacts with the forum state, here, Ohio.  *Air Prods.*, 503 F.3d at 553; *see also Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1096 (9th Cir. 2023) ("Plaintiff's claims—which allege harm caused by Defendants' sales of products—clearly arise out of and relate to Defendants' conduct of selling those same products to [in-forum] residents.").  While Spreadshirt argues it did not "sell" any products to an Ohio resident, and instead merely shipped the product, this is not a meaningful distinction when assessing whether conduct "arises out of" Defendants' contacts with Ohio.

### c. Reasonableness

The last step in the due process inquiry is determining whether exercising personal jurisdiction would be reasonable.  Where, as here, a plaintiff establishes a "prima facie case regarding purposeful availment and relatedness, 'an inference arises that this third factor is also present.'"  *AMB Media*, 2024 WL 2052151, 2024 U.S. App. LEXIS 11277, at *15 (quoting *Sullivan*, 79 F.4th at 674).  To overcome this inference, a defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988) (citing *Burger King*, 471 U.S. at 477).  In assessing reasonableness, courts consider multiple factors, including: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy."  *Air Prods.*, 503 F.3d at 554-55.  Under the reasonableness prong, the focus of the analysis is whether defendant's actions had "a substantial enough connection with the forum state to make the

exercise of jurisdiction . . . reasonable." *Sullivan*, 79 F.4th at 670 (quoting *AlixPartners*, 836 F.3d at 549-50).

Simply put, Spreadshirt's actions must have a "substantial enough connection" to Ohio that exercising personal jurisdiction in this forum is reasonable.  Ohio has at least some interest in preventing trademark infringing material from entering its forum and has an interest in preventing trademark infringers from profiting from fraudulent activities in Ohio.  At bottom, exercising jurisdiction over Spreadshirt does not offend traditional notions of fair play and substantial justice where, as here, Spreadshirt acknowledges it conducts business in Ohio, employs an individual in Ohio, and the trademark infringement claims relate to Spreadshirt's business activities.  *See Int'l Shoe*, 326 U.S. at 316.  "[L]ongstanding precedent establishes that a company's choice to welcome customers from and regularly sell products into a state subjects the company to that state's jurisdiction."  *AMB Media*, 2024 WL 2052151, 2024 U.S. App. LEXIS 11277, at *16 (citing *World-Wide Volkswagen*, 444 U.S. at 298).  Making exceptions to e-commerce companies would permit them "to reap the benefits of a nationwide market while foreclosing customers' ability to seek redress where injured."  *Id.*  "[R]egardless of how it sells its products, a company doing repeated business in given fora 'enters those jurisdictions through the front door,'" there is no reason "when faced with the process server, it should be allowed to escape out the back."  *Id.* at *16-17 (quoting *Ford*, 592 U.S. at 384 (Gorsuch, J., concurring)).

### C.      The German Entities

Separate from Spreadshirt, the German Entities, sprd.net AG and Spreadshirt Print on Demand, seek dismissal for lack of personal jurisdiction.  (Doc. 16 at 257.)  BBC counters that dismissal is not appropriate.  (Doc. 15 at 185.)  As explained above, BBC bears the burden of establishing personal jurisdiction over the German Entities.  *Bird*, 289 F.3d at 871.  As it relates

to the German Entities, BBC does not argue they satisfy the requirements for specific jurisdiction generally.  Instead, BBC argues the Court has personal jurisdiction over the German Entities *only* through an alter-ego theory.  (Doc. 15 at 185.)

"[T]he alter-ego theory provides for personal jurisdiction 'if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction.'"  *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 848 (6th Cir. 2017) (citations omitted).  In *Estate of Thomson v. Toyota Motor Corp. Worldwide*, the Sixth Circuit explained:

> [F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.

545 F.3d 357, 362 (6th Cir. 2008) (citations omitted).  "The alter-ego theory of personal jurisdiction is akin to piercing the corporate veil of a parent corporation."  *Nottingham-Spirk Design Assocs., Inc. v. Halo Innovations, Inc.*, 603 F. Supp. 3d 561, 569 (N.D. Ohio 2022).  Start with the general proposition that "[a] parent corporation generally is not liable for the acts of its subsidiary, even if its subsidiary is wholly owned."  *Transition Healthcare Assocs., Inc. v. Tri-State Health Invests., LLC*, 306 F. App'x 273, 280 (6th Cir. 2009).  When assessing the alter-ego theory under federal law, applicable here because the trademark infringement claims presented are federal causes of action, "'a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice.'"  *Anwar*, 876 F.3d at 849 (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015)).  The "unity of interest" element requires:

> A showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former . . . exercising pervasive control over the subsidiary . . . from broad policy decisions to routine matters of day-to-day operation.  Total ownership and shared management personnel are alone insufficient to establish the requisite level of control.

*Id.* (quoting *Ranza*, 793 F.3d at 1073).  Courts assess a variety of factors to make this determination, including "'(1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation.'"  *Id.* (quoting *Estate of Thomson*, 545 F.3d at 362-63).

BBC has not pleaded facts sufficient to make out a prima facie case that either sprd.net AG or Spreadshirt Print on Demand are alter-egos of Spreadshirt.  BBC's Complaint contains no allegations relating to its alter-ego theory of personal jurisdiction.  Nor does BBC allege that either sprd.net AG or Spreadshirt Print on Demand controls Spreadshirt to such a degree that Spreadshirt is a mere instrumentality of them.  BBC alleges nothing about the relationship between the three entities.

BBC only attempts to assert an alter-ego theory in its opposition to the Motion to Dismiss, but BBC falls short.  BBC asserts the three entities promote themselves as "one unit." (Doc. 15 at 185.)  They allegedly share production sites in Europe.  (*Id.*)  BBC also says all Defendants share corporate and board leadership.  (*Id.* at 186.)  These allegations are insufficient. The Sixth Circuit has specifically found "[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control."  *Anwar*, 876 F.3d at 849 (a plaintiff "must demonstrate 'unity of interest and ownership' that goes beyond mere ownership and shared management personnel.").  BBC has alleged no facts, and has asserted none in

opposition, showing a "unity of interest and ownership" such that "the separate personalities of the two entities no longer exist." *Id.* Instead, BBC relies on vague statements regarding the relationships between the entities and does not put forth a prima facie case the German Entities exerted any control over the operations of Spreadshirt. Instead, the documents submitted suggest a separate corporate structure based on different regional operations. Even construing all facts in BBC's favor, the Court finds it has not sufficiently pleaded an alter-ego theory permitting the exercise of personal jurisdiction over the German Entities. *See Nottingham-Spirk*, 603 F. Supp. 3d at 569 (finding no alter-ego theory sufficiently pleaded where no evidence showed entity "exerted so much control" over defendant "such that the two entities are one and the same"). The Court does not have personal jurisdiction over sprd.net and Spreadshirt Print on Demand.

### D.    Motion to Transfer

In addition to Spreadshirt's personal jurisdiction challenge, it alternatively moved to transfer the matter pursuant to 28 U.S.C. § 1404(a) if the Court found it could exercise personal jurisdiction.

As a threshold issue, courts must have personal jurisdiction over a defendant to transfer a matter under § 1404(a). *Newberry v. Silverman*, 789 F.3d 636, 641 (6th Cir. 2015) ("[Section] 1404(a) is limited to the transfer of actions commenced in a district court where both personal jurisdiction and venue are proper."); *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993) ("a transfer under section 1404(a) may not be granted when the district court does not have personal jurisdiction over the defendants"). Because the Court has personal jurisdiction over Spreadshirt, the Court can consider the motion pursuant to § 1404(a) as it relates to Spreadshirt. But it cannot do so for the German Entities because the Court does not have personal jurisdiction

over them.  That said, federal courts have the power to transfer cases *sua sponte* under other transfer statutes, here, § 1406(a) and § 1631.  *Flynn v. Greg Anthony Constr. Co., Inc.*, 95 F. App'x 726, 738 (6th Cir. 2003) ("Congress has enacted a number of statutes that give federal courts the power to transfer cases *sua sponte*," including § 1406(a) and § 1631).  Though no party raised it, the Court considers transfer as it relates to Spreadshirt under § 1404(a) and transfer as it relates to the German Entities under § 1406(a) or § 1631.  *See Veteran Payment Sys., LLC v. Gossage*, No. 14-cv-981, 2015 WL 545764, 2015 U.S. Dist. LEXIS 16261, at *20 (N.D. Ohio Feb. 10, 2015) (collecting cases assessing motions to transfer and applying § 1404(a) to entities the court has personal jurisdiction over and § 1406(a) or § 1631 for those it does not).

### 1.    Spreadshirt

Section 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer a civil action to any other district or division where it might have been brought[.]"  28 U.S.C. § 1404(a).  The latter phrase refers to "the federal laws delimiting the districts in which such an action 'may be brought.'"  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 57, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013) (citations omitted).  On a § 1404(a) motion (or a forum non conveniens motion), a court "must evaluate both the convenience of the parties and various public-interest considerations.  Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'"  *Id.* at 62-63 (citing § 1404(a)).  The district court must "weigh in the balance a number of case-specific factors."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988).  "The burden is on the defendant as the moving party to establish that there should be a change of venue."  *LaCroix v. Am. Horse Show Ass'n*, 853 F.

Supp. 992, 1000 (N.D. Ohio 1994) (citations omitted).  "District courts have wide discretion in deciding motions to transfer."  *Zimmer Enters. v. Atlandia Imps., Inc.*, 478 F. Supp. 2d 983, 990 (S.D. Ohio 2007) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)).

The first inquiry is whether the proposed alternative venue is a district where the action may have been brought.  *See* § 1404(a).  This inquiry consists of three questions: (1) whether the proposed alternative court could exercise original jurisdiction over this case; (2) whether that court would have personal jurisdiction over the defendants; and (3) whether venue would be proper in that court.  *See Zimmer Enters.*, 478 F. Supp. 2d at 990 (citations omitted).  Next, the Court must weigh case-specific factors, private factors, and public-interest factors.  *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002).  Case-specific and private factors include, but are not limited to: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.  *See Means v. United States Conf. of Cath. Bishops*, 836 F.3d 643, 651-52 (6th Cir. 2016); *see also Audi AG v. Shokan Coachworks, Inc.*, No. 04-70626, 2007 WL 522707, 2007 U.S. Dist. LEXIS 10054, at *7 (E.D. Mich. Feb. 13, 2007) ("The Court may also consider any factor which may make any eventual trial easy, expeditious, and inexpensive.").  The Court must also consider "public-interest concerns, such as systemic integrity and fairness, which come under the rubric of interests of justice."  *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (quotations and citations omitted).  The Court need not discuss each factor; it should focus its analysis on those factors that are particularly relevant.  *Krawec v. Allegany Co-*

*Op Ins. Co.*, No. 08-cv-2124, 2009 WL 1974413, 2009 U.S. Dist. LEXIS 57792, *16 (N.D. Ohio July 7, 2009).

Here, the parties agree three other venues would have been proper in the first instance and that each would have personal jurisdiction over Spreadshirt.  (Doc. 12-1 at 124; Doc. 15 at 186.)  These forums are: (a) the Western District of Pennsylvania; (b) the District of Delaware; and (c) the Southern District of New York.  (Doc. 12-1 at 124; Doc. 15 at 186; Doc. 16 at 263-64.)  The Court agrees each would be proper venues and courts in those districts would have personal jurisdiction over Spreadshirt.  The only dispute then is whether the case-specific factors, private factors, and public-interest factors weigh in favor of transfer.

The convenience of the parties and witnesses favor a different forum than this District.  Neither BBC nor Spreadshirt is incorporated in Ohio.  Neither have principal places of business in Ohio.  The only connection to Ohio is the single sale of products which was purchased in New York but sent to an Ohio address.  Further, BBC's Complaint alleges a broad array of trademark infringement claims, some of which are not targeted at this single sale.  It is also possible that some of these witnesses may be outside of this Court's subpoena power, for both BBC and Spreadshirt.

Considering the interest of justice, the key facts of this case weigh in favor of a transfer.  The purchaser of the infringing product is a resident of New York, not Ohio.  The only connection to Ohio regarding any infringing activity Spreadshirt has engaged in is shipping the product to an Ohio address.  Further, the interests of other forums are far greater in this case.  Given Spreadshirt operates out of Pennsylvania and would have directed any alleged trademark infringement or other unlawful activity from there, Pennsylvania has a strong interest in this suit.  So too does New York.  An injury to a plaintiff claiming trademark infringement "occurs both in

places where the plaintiff does business and in the state where its primary office is located."
*Bird*, 289 F.3d at 876 (citing *Panavision*, 141 F.3d at 1321).  While true BBC might suffer some injury in Ohio from the shipping of goods to an Ohio address, the brunt of the injury will occur where BBC is located.  While the Court found the Complaint sufficiently alleged personal jurisdiction with respect to due process, the Court notes that the only connection to Ohio is a potential manufactured sale.  That is, Spreadshirt has presented evidence, which BBC does not rebut, that the purchase made by a New York resident and shipped to Ohio was made by BBC's agent.  While the Court takes no position on the propriety of such purchase, the interests of justice would be better served in a forum which has more of a connection to the operative facts of this case.  This is particularly true where no party is at home in Ohio.

BBC opposes the motion to transfer but does not address the above factors.  The arguments BBC does put forth are unpersuasive.  BBC asserts its choice of venue should be given a large degree of deference.  (Doc. 15 at 186.)  It is true the Court must give great weight to a plaintiff's choice of venue, but that factor is not dispositive.  *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998).  Further, this consideration weighs significantly less where, as here, little to none of the conduct in the Complaint, other than a single sale, occurred in this forum.  *See Flatt v. Aspen Dental Mgmt.*, Inc., No. 18-cv-1278, 2019 WL 6044159, 2019 U.S. Dist. LEXIS 198442, at *20 (S.D. Ohio Nov. 15, 2019) ("the weight of a plaintiff's choice of forum is lessened . . . when little to none of the conduct giving rise to the action occurred in the chosen forum"); *Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734 (E.D. Mich. 2004) (holding a plaintiff's choice of forum does not weigh heavily "where a plaintiff has little or no connection to the chosen forum").

BBC also argues other districts have busier dockets.  (Doc. 15 at 188.)  While that may be true, that factor does not outweigh the other considerations discussed above when so little of the alleged conduct occurred in Ohio.  Lastly, BBC argues Pennsylvania, Delaware, and New York law does not apply to this case which makes those forums less convenient.  (*Id.*)  Three of the four claims BBC asserts arise under federal law.  Any federal district court is equally competent to hear those claims.  The Court is confident other district courts can appropriately consider BBC's unfair competition claim arising under Ohio law.  This is particularly true where Ohio's unfair competition law mirrors the analysis under the federal claims.  *See Dish Network, LLC. Fun Dish, Inc.*, No. 08-cv-1540, 2015 WL 3650190, 2015 U.S. Dist. LEXIS 75732, at *24 (N.D. Ohio June 11, 2015) ("Plaintiff's Lanham Act, Ohio Deceptive Trade Practices Act and Ohio Unfair Competition common law claim are all similarly analyzed.").

In balancing the above considerations, the Court finds transfer is appropriate under these circumstances.  The Court finds the Southern District of New York is the most appropriate forum.  The sale took place in New York.  BBC's principal place of business is in New York.  To the extent trademark infringement has harmed BBC, it would be there.  The Southern District of New York would also be the most convenient for the parties.  *See Shenzhen Aji Fashion Tech. Co. Ltd. v. WhaleCo Inc.*, No. 23-cv-14043, 2024 WL 2845974, 2024 U.S. Dist. LEXIS 99464, at *26-27 (N.D. Ill. June 5, 2024) (granting motion to transfer trademark infringement case to principal place of business of defendant where plaintiff sued in Illinois relating to e-commerce website which sold trademark infringing material).  The claims against Spreadshirt are transferred to the Southern District of New York.

### 2.     The German Entities

Having concluded it lacks personal jurisdiction as to the German Entities, this Court may either "dismiss[ ] the action without prejudice, or, in the interest of justice, transfer[ ] it to a court that has personal jurisdiction over [the defendant] pursuant to 28 U.S.C. §§ 1406(a) or 1631." *Cosmichrome, Inc. v. Spectra Chrome, LLC*, 504 F. App'x 468, 472 (6th Cir. 2012) (first citing *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005), then citing *Roman v. Ashcroft*, 340 F.3d 314, 328-29 n.11 (6th Cir. 2003)).  The choice between dismissal and transfer falls within the sound discretion of the district court.  *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998).  "Doubts about whether to transfer or dismiss are usually resolved in favor of transfer because the interest of justice generally is better served by transfer."  *Delta Media Grp., Inc. v. Kee Grp., Inc.*, No. 07-cv-01597, 2007 WL 3232432, 2007 U.S. Dist. LEXIS 80878, at *24 (N.D. Ohio. Oct. 31, 2007) (citation omitted).

"Section 1406(a) allows a district court to grant a change of venue when venue is improper in the original forum."  *O'Brien Constr., Inc. v. Miller*, No. 19-cv-1451, 2020 WL 1187259, 2020 U.S. Dist. LEXIS 43033, at *11 n.3 (N.D. Ohio Mar. 12, 2020) (citing *Pittock*, 8 F.3d at 329).  A "district is 'wrong' within the meaning of § 1406 when there is . . . 'either improper venue or lack of personal jurisdiction.'"  *Jones v. Grants Auto.*, No. 21-cv-2366, 2022 WL 874284, 2022 U.S. Dist. LEXIS 53591, at *3 (N.D. Ohio Mar. 24, 2022) (citing *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980)).  If the court decides to transfer, however, it may only transfer "to any district or division in which it could have been brought."  28 U.S.C. § 1406(a). Similarly, under § 1631, a court may transfer a case "if it is in the interest of justice" to a district in which it "could have been brought at the time it was filed."  28 U.S.C. § 1631.

As discussed above, BBC only asserts the Court has personal jurisdiction over the German Entities through an alter-ego theory. This theory of liability is as true in this district as it is in any other. But without more known to it, the Court cannot ascertain what courts, if any, would be able to exercise personal jurisdiction over the German Entities. For this reason, the Court dismisses the claims against the German Entities without prejudice.

## III. CONCLUSION

For the reasons stated above, the Motion to Dismiss or Transfer submitted by Defendants Spreadshirt, Inc., sprd.net AG, and Spreadshirt Print on Demand GMBH (Doc. 12) is GRANTED in part and DENIED in part. Defendants sprd.net AG and Spreadshirt Print on Demand GMBH are DISMISSED without prejudice because the Court lacks personal jurisdiction. The Court TRANSFERS the remainder of this case to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

**IT IS SO ORDERED.**

Date: March 31, 2026

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE